## LEE *v.* OLIGER

[No. 16,366. Filed May 23, 1939. Rehearing denied October 18, 1939.]

*John E. Osborn,* and *Turner & Woodfill,* for appellant.

*Cooper, Royse, Gambill & Crawford,* for appellee.

DUDINE, J.—This is an appeal from an award of the Industrial Board which denied appellant compensation.

The full Industrial Board found "that on December 29, 1936, while in the employ of . . . (appellee) at an average weekly wage of $21.60 . . . (appellant) suffered an injury as the result of an accident arising out of and in the course of his employment. . . . That on December 20, 1937, . . . (appellant's left eye was enucleated. . . . And the Full Industrial Board, by a majority of its members . . . (found) . . . that the enucleation of . . . (appellant's) left eye was not directly or indirectly the result of the accidental injury sustained by . . . (appellant) . . . on December 29, 1936."

Appellant has assigned as error on appeal that the award is contrary to law. Appellant contends that the evidence does not sustain the finding and that the evidence conclusively shows facts under which he was entitled to an award of compensation.

It was stipulated by the parties that "on the 29th day of December, 1936, . . . (appellant) was in the employ of . . . (appellee) at an average weekly wage of $21.60 and on said date . . . (appellant) met with an accident arising out of and in the course of his said employment . . . ."

The evidence shows the "accident" was a "speck" of some foreign substance falling in appellant's left eye while he was painting a "sand finish" ceiling in a school room. This occurred on December 29, 1936. The foreign substance was removed by a doctor on December 31, 1936, two days after the accident. Another doctor examined the eye on September 6, 1937,

more than eight months after the accident, and observed that an ulcer had developed. The ulcer at that time was "very large"; it covered the central portion of the cornea; the eye was blind then and beyond chance of improvement, but the ulcer was still active. A third doctor examined the eye December 9, 1937, about eleven months after the accident, and found that the ulcer had become inactive and the eye was in such condition that he advised its enucleation as a protection to the right eye. The enucleation was performed December 20, 1937.

The doctor who examined the eye in September, 1937, after the ulcer had developed testified that the ulcer was due to an injury. Upon cross-examination he gave as a basis for that opinion the fact that "ulcers are due as a rule to injury and infection following."

The doctor who saw the eye in December, 1937, after the ulcer became inactive, testified that "it (the eye) had the appearance of an eye that had received an injury (from the outside)."

Both of said doctors testified in effect that said ulcer and enucleation of the eye *could* have been caused by a foreign substance falling in appellant's eye on December 29, 1936. Their opinion was based upon the supposition that the surface of the eye was broken by the foreign body, leaving defective tissue, and infection set in. They testified that the nature of an ulcer "is the breaking down of tissue assisted with infection of the tissue;" that the period of "incubation" of an ulcer is from thirty-six to seventy-two hours but "the duration of the process" resulting in an ulcer could be "two or three years."

Appellant testified that the eye pained him continually from the time of the accident on December 29, 1936, until the eye was removed on December 20, 1937;

that the eye did not give him "any bother" before the accident and that he did not receive any injury of any kind to the eye after the accident. Said testimony was corroborated by other witnesses, and was not disputed by any evidence.

Appellant contends that the medical evidence conclusively shows that the ulcer was caused by an injury, that said evidence when considered with the evidence of continual pain from the date of the accident to the date of removal of the eye, and with the evidence that there was no other injury to the eye after said accident, all of which evidence is undisputed, established a claim for compensation.

In determining the sufficiency of the evidence to sustain the finding of the Industrial Board we must bear in mind the fact that appellant had the burden of proving every ultimate fact which was necessary to establish a claim for compensation. In order to justify a reversal of the award in the instant case on the ground of insufficiency of the evidence to sustain the finding the evidence must so conclusively prove each of such ultimate facts that it can not be reasonably construed to give rise to inferences favorable to appellee as to any of such ultimate facts.

If appellee failed to prove any one of such ultimate facts, he failed to establish a claim for compensation and the award of the Industrial Board that he recover nothing by his application is not contrary to law.

One of the ultimate facts necessary to establish appellant's claim for compensation was the fact that the loss of the left eye was the result of said accident. The Industrial Board expressly found "that the enucleation of . . . (appellant's) left eye was not directly or indirectly the result of the

accidental injury sustained . . . December 29, 1936.''
We shall proceed to determine whether the evidence
as to such ultimate fact was so conclusive in favor of
appellant that it could not be reasonably construed
to give rise to inferences which were favorable to ap-
pellee and favorable to the finding of the Industrial
Board as to such ultimate fact.

The doctor who removed the foreign body from ap-
pellant's eye two days after the accident testified that
the foreign body was very small; that it had not pene-
trated the eye but was ''rather superficial;'' that he
removed the foreign body and gave appellant some
eye drops to use at home; that he examined the eye on
January 2, 1937, five days after the accident, when ap-
pellant complained of irritation and ''simply gave
him something to relieve that irritation;'' that he
saw appellant's eye on January 4, 1937, and January
13, 1937, on each of which occasions appellant com-
plained of irritation and the doctor treated it for the
irritation. The doctor noticed calcerous deposits in
the lid of the eye upon those occasions, but there was
no ulcerous condition in the eye. On April 28, 1937,
about four months after the accident, the doctor re-
moved some of the calcerous deposits ''that seemed
to irritate'' appellant. On May 5, 1937, the doctor re-
moved a chalazion, a tumor like growth on the eye lid,
which had no connection with the accident. At that
date there were still some calcerous deposits on the lid
but there was no evidence of ulceration in the eye.
That doctor did not see appellant's eye after May 5,
1937. He testified further that two or three days after
he removed the foreign body there was no ''evidence
of any foreign body having been there . . . . At any
subsequent time I didn't see any evidence of the
foreign body having been there. . . , The eye was
healed up. There was nothing there.''

That doctor's qualifications were proven and were not challenged. His opinion as to the possibility of the foreign body having caused the loss of the eye, being based not only upon his medical knowledge, but upon his examination of the eye at the time of its removal and three (3) days, five (5) days, fourteen (14) days, and four (4) months and five days later, is certainly entitled to some weight.

It seems expedient to note here that the evidence of the three doctors as to whether or not the foreign body was the cause of the enucleation of the eye is not conflicting. The doctor who removed the foreign body and treated the eye as we have stated testified in effect that the foreign body *was not* the cause of the enucleation of the eye, while the other doctors, whose opinion was based upon a history given them by appellant and upon examinations made approximately eight (8) months and eleven (11) months after the accident, testified in effect that the foreign body *could have caused* the enucleation of the eye, *not* that it *was* the cause. It is apparent that the medical testimony herein was not so conclusive to the effect that the accident of December 29, 1936, caused the enucleation of the eye, that inferences to the contrary could not be reasonably drawn therefrom.

The evidence of said doctor who removed the foreign body from the eye is, of itself, sufficient to sustain the finding of the Industrial Board "that the enucleation of . . . (appellant's) left eye was not directly or indirectly the result of the accidental injury sustained . . . December 29, 1936."

In view of the conclusion we have reached as to the sufficiency of the evidence of said doctor, of itself, to sustain such finding of the Industrial Board we deem it unnecessary to discuss appellant's contentions which are based upon the evidence which tended to

show that appellant had received no other injury to said eye after said accident. It is sufficient to say that it was the duty of the Industrial Board to weigh the evidence and to determine which evidence was most worthy of belief and this court is not authorized upon appeal to weigh the evidence, and review the action of the Industrial Board in making such determination; therefore the fact that said evidence is conflicting with the evidence of said doctor, *if it is a fact,* does not authorize this court to substitute its determination, as to which line of evidence is most worthy of relief, in lieu of such determination by the Industrial Board.

Appellant emphasizes the fact that our Workmen's Compensation Act should be liberally construed in order that its humane purposes may not be defeated. In determining this appeal we have not been unmindful of said rule. Our determination of this appeal is based upon the proposition that said rule does not relieve the applicant for workmen's compensation from the burden of proving every ultimate fact which is necessary to establish a claim, and upon the further proposition that the finding of such ultimate facts is within the province of the Industrial Board and when the Industrial Board has made a finding as to such ultimate facts its findings must be sustained by this court upon appeal if there is any reasonable evidence in the record to support it.

The award of the Industrial Board is affirmed.