JEFFERSONVILLE BOAT & MACHINE COMPANY *v.*
RAGER ET AL.

[No. 17,447.   Filed March 28, 1946.]

*Fox & Fox*, of Jeffersonville, for appellant.

*Thomas S. Pointer*, of Jeffersonville, and *James L.* *Murray*, of Indianapolis, for appellees.

BOWEN, J.—This is an appeal from an award of a majority of the full Industrial Board granting appellees, the widow and child of one Frank Rager, compensation for the death of the said Rager, who was an employee of the appellant at the time of his death.

The majority of the Board found that on the 15th day of December, 1944, Frank A. Rager, appellees' decedent, was in the employ of appellant at an average weekly wage in excess of $34.00; that on said date he sustained personal injuries by reason of an accident aris-. ing out of and in the course of his employment with. the appellant, of which said accidental injuries the said Frank A. Rager died the same day. An award of compensation upon such finding was made by a majority of the full Board in favor of appellees in equal shares, and against appellant, at the rate of $18.70 per week during the period of their dependency, not to exceed 300 weeks, and not to exceed the sum of $5,500.00.

The appellant appeals to this court on the statutory ground that the award of the Industrial Board is contrary to law.

The question presented by this appeal is whether or not there is competent evidence to establish that the decedent's death was caused by carbon monoxide poisoning, as claimed by appellees.

The evidence discloses that decedent was employed as a shipfitter whose regular duties required him to test the seams in the tanks of LST boats for appellant. On the day he met his death he had entered the wing tank of the LST boat, in which his body was later found, to test the welding for leaks. This tank was 24 feet long, 10 feet wide at the top, and 12 feet 5⅝ inches deep in its inner side; and the bottom and under side were curved, making the ends of the tank substantially a quarter circle. The only entrances to this tank from any direction were from the top and down ladders through two oval manholes, each one foot three inches wide and one foot 11 inches long. Decedent entered this tank about 11:15 A. M.; a fellow workman called down to decedent about 11:35 A. M. and received no answer; and decedent's boy was found about 12:45 or 12:50 P. M. of the same day. He was lying flat on his back and had suffered very slight abrasions of his right cheek. There was evidence that two five-gallon buckets for the use of burning coke for heating purposes, and which are called salamanders, were present in the wing tank during the time decedent was in the tank on the day in question. There was testimony that these salamanders were cold some time after the body was discovered, and there was also testimony that there were quite a few ashes on the floor of the tank and ashes on decedent's face.

Dr. H. R. Wilbur, the doctor who performed the autopsy on decedent, stated his opinion that death was due to carbon monoxide poisoning, and testified that he based such opinion on the following facts: the absence of outward signs of cyanosis; the absence in the heart of extreme heart disease; the absence of enlargement of the heart; and the presence in the viscera and in the superficial circulation of a cherry red hue characteristic of carbon monoxide poisoning. The coroner testified, "The body had a peculiar redish cast." Appellant's expert witness, Dr. A. J. Miller, testified, "If I saw the cherry red color and it appeared that to me, I'd think of carbon monoxide, certainly."

Appellant asserts as ground for reversal that there is not competent evidence to establish that decedent's death was caused by carbon monoxide poisoning, basing this contention upon the claim that there was no showing of the presence of gas in the wing tank, and that the medical opinion that carbon monoxide poisoning was the probable cause of death is of no probative value, as it is predicated only on the discovery of a rosy hue (or cherry red hue) in the face, skin and internal organs of decedent.

If there is competent evidence to establish that decedent's death was caused by carbon monoxide poisoning, the finding and award of the Industrial Board cannot be reversed by this court.

Where the Industrial Board has reached a conclusion as to ultimate facts, we must accept such facts as established unless the evidence is of such a conclusive character as to force a contrary conclusion.

We recognize the rule that the burden of establishing each ultimate fact necessary to a legal award of com-

pensation rests upon the applicant; and the proof by which such burden is discharged must be based on something more than mere guess, conjecture, surmise or possibility. *Swing* v. *Kokomo Steel, etc., Co.* (1921), 75 Ind. App. 124, 125 N. E. 471; *Lee* v. *Oliger* (1939), 107 Ind. App. 90, 21 N. E. (2d) 65.

There is direct evidence of the presence in decedent's body and body reactions of a cherry red hue on the face, skin and internal organs which is characteristic of carbon monoxide poisoning. There is direct evidence of the presence of ashes and the two salamanders in the wing tank. There is evidence of the physical nature of this wing tank where decedent's body was found.

In considering whether or not the appellees have established by competent evidence the ultimate fact that decedent's death was caused by carbon monoxide poisoning as alleged, it is well settled that the sufficiency of such evidence may be considered in the light of any reasonable inferences which may be legitimately drawn from the record evidence by the trier of the facts. Where there is conflict we consider only such evidence and reasonable inferences therefrom as tend to sustain the award. *Hunt* v. *Gutzwiller Baking Co.* (1937), 104 Ind. App. 209, 9 N. E. (2d) 129; *Silvestro* v. *Walz* (1944), 222 Ind. 163, 167, 51 N. E. (2d) 629; *Kaiser* v. *Happel* (1941), 219 Ind. 28, 36 N. E. (2d) 784.

The medical opinion of Dr. Wilbur predicated upon the direct evidence of the cherry red hue on the skin and internal organs of decedent, when considered with all of the other evidence, including the physical nature of the wing tank in which decedent's body was found and the presence of the salamanders and ashes in such tank, has probative value and constitutes a sound, reasonable, and legitimate in-

ference which is not based upon a mere guess, conjecture, surmise or possibility, as claimed by appellant.

Where there is a rational connection between facts established by direct evidence and the ultimate fact inferred therefrom, such inference is not disqualified simply because the subject thereof is a matter of scientific knowledge. *Magazine* v. *Shull* (1945), *ante*, p. 79, 60 N. E. (2d) 611.

We hold that there is competent evidence in the record before us, when considered in the light of reasonable inferences which were legitimately drawn therefrom by the full Industrial Board, that decedent's death was caused by carbon monoxide poisoning suffered while he was working in this wing tank for appellant, and that there is sufficient competent evidence to sustain the finding and award of the full Industrial Board.

It is a well settled principle of law that this court will not weigh evidence, and if there is any competent evidence to sustain the award it will not be disturbed on appeal.

Finding no reversible error herein, the award of the full Industrial Board is affirmed with statutory increase of five per cent.

NOTE.—Reported in 65 N. E. (2d) 638.