SILVESTRO *v.* WALZ.

[No. 27,915. Filed December 8, 1943. Rehearing denied January 17, 1944.]

*Marguerite Glaser* and *Oscar B. Thiel,* both of Gary, for appellant.

*Bomberger, Peters & Morthland,* and *Afred D. Highland,* all of Hammond, for appellee.

RICHMAN, J.—Appellee recovered judgment on a verdict for $1,400 on account of personal injuries sustained by falling down an unguarded stairway in appellant's shop. All the errors relied upon are specified in the motion for new trial. By the verdict the jury determined against appellant the issues that appellee was an invitee, appellant was negligent, and appellee free from negligence proximately contributing to his injury. Ordinarily these are questions of fact for the jury. We are asked to hold as a matter of law that each issue was erroneously determined. To reach such conclusion we must be able to say that no other reasonable inference may be drawn from the facts shown by the evidence. Where there is conflict we consider only such evidence and reasonable inferences therefrom as tend to sustain the verdict.

The building which housed appellant's shop was on the northwest corner of Broadway and 19th Avenue in the City of Gary. He conducted therein the business of repairing springs and aligning automobile wheels. The building extended fifty feet north from the corner on Broadway and one hundred and twenty feet west

from the corner on 19th Avenue. The automobile entrance was on the north side of 19th Avenue some thirty or forty feet from the corner. East of the entrance and in the southeast corner of the building was a space about twenty-two by twenty-five feet where two automobile racks were located. This space was open to the rest of the shop. North of this was an office, twenty-five by twenty-five feet enclosed by wood and glass partitions. Between the office and the north wall was the stairway in question, the entrance thereto being 39 inches wide and on a line with the west partition of the office. The landing or top step of the stairs was twenty-nine inches wide. "There was no light there, no way to make a light." There were no windows in the north wall. In the office artificial light was always used. Eight windows were in the west wall ninety-five feet from the stairs. Windows in the south wall were almost fifty feet from the stairs. On the occasion in question there was no door nor gate at the stair entrance and no signs indicating that it was private or dangerous. "It looked like a passageway." Immediately south thereof was a door to the office with the word "Private" thereon. Cars driven into the shop for service proceeded straight north from the door leaving a space of perhaps ten feet between the right side of the car and the west partition of the office. In the middle of the west wall was an enclosed toilet but with no sign thereon to indicate that it was such. The door thereto faced north. No place in the shop was specifically reserved for waiting customers. A sign asked customers not to speak to the workmen. Except as above stated the entire ground floor of the shop was open and there were no signs nor railings indicating that any portion was not to be used by persons waiting while work was performed on their cars.

On the morning of May 16, 1940, appellee drove his Plymouth automobile into the shop for the purpose of realignment of wheels. He stopped the car close to the north wall. The manner in which the injury occurred was described by him alone. Following are excerpts of his testimony on direct examination:

"Why, my car was out of line. I drove to Nineteenth and Broadway to have the wheels adjusted. I drove in on Nineteenth Street, just an opening for you to drive a car. I drove in facing north. I got out of my car and I had to go to the washroom. I walked around the car and I passed an office doorway. And then there was an areaway north of this office door and I thought probably that would be the washroom. It being dark, I stopped for a minute, and took a step forward, and as I did, I landed at the bottom of these stairs, . . ."

"I got out of the car, and I was looking, there was no one there at the present time, and I was looking for a toilet and I walked around my car and I seen this area-way next to this office door and it looked like a passage-way."

"Q. Did you ever learn where the toilet was in this place of business of Mr. Silvestro?

"A. After I had fallen down and explained it, why Mr. Silvestro showed me where the toilet was.

"Q. Did you go there?

"A. Yes.

"Q. Use it?

"A. Yes, sir.

"Q. Was that before or after you went to Dr. Goldstone?

"A. It was before I went to the doctor. I am most sure."

On cross examination he testified:

"Q. You say it was all dark?

"A. All dark.

"Q. You couldn't see beyond the entrance?

"A. You came in out of the light—

"Q. And walked into this dark space without knowing what was there?

"A. I thought it was an area passing to the toilet.

"Q. You had never been to any toilet there before?

"A. No.

"Q. You didn't know there was one there?

"A. No.

"Q. You didn't ask anybody whether there was one there?

"A. No, in a hurry."

His sight and hearing were good. He had been in the shop on similar business two or three years before and waited therein while the work was being done.

Appellant's contention that he was not negligent is predicated upon the assumption that appellee was not an invitee at the time and place of his injury. Invitation, whether express or implied, imposes the duty to use ordinary care that the place of invitation be reasonably safe for the invitee. If the duty here existed it cannot be doubted that the evidence was sufficient to show its breach by failure to bar, guard, properly light or otherwise warn of the danger of the open stair entrance, which, without such precaution, might become a trap for the unwary. So

the controlling question upon the issue of negligence is whether or not appellee was an invitee.

It is insisted by appellant that an implied invitation to a customer extends only to that part of the proprietor's premises *necessary* for the transaction of their mutual business. He persuaded the trial court to so instruct the jury. The area is not so narrowly circumscribed. A customer is invited to all parts of the premises that may reasonably be expected to be used in the transaction of the mutual business, those incidental as well as those necessary.

> "Nor would it seem unreasonable to hold that the owner of the premises should anticipate what is usually and customarily done by an invitee within the scope of, and to carry out the purpose of the invitation. See *Ford* v. *Dickinson*, 280 Mo. 206, 217 S. W. 294; *True* v. *Meredith Creamery*, 72 N. H. 154, 55 Atl. 893." *Loney* v. *Laramie Auto Co.* (1927), 36 Wyo. 339, 255 P. 305, 53 A. L. R. 73, 79.

The proprietor of any automobile repair shop may reasonably expect that his customers will not sit or stand in one place awaiting completion of the repairs. Usually they are interested in what is being done and move about in the vicinity of the operation. Appellant could not be blind to this common practice. The place in his shop to which appellee unquestionably was invited to drive his car was only a few feet from the stairway. If between the car and the stair entrance there was to be a dividing line beyond which he was a mere licensee, the boundary should have been realistic. Barriers and signs may be seen. This was recognized by appellant for he set apart his office by partition and sign. He could have provided a space behind railings for waiting customers. But in all the shop, and particularly the vicinity of appellee's car, there was no

barrier by structure or sign keeping him from any place except the office. From all these circumstances the jury might reasonably have inferred that appellant's invitation covered the space adjacent to the car including the stair entrance. The following cases tend to support this conclusion. *Howe et al.* v. *Ohmart* (1893), 7 Ind. App. 32, 33 N. E. 466; *Pauckner* v. *Wakem* (1907), 231 Ill. 276, 23 N. E. 202, 14 L. R. A. (N. S.) 1118; *Pope* v. *Willow Garages, Inc.* (1931), 274 Mass. 440, 174 N. E. 727; *Franey* v. *Union Stockyard & Transit Co. of Chicago* (1908), 235 Ill. 522, 85 N. E. 750; *Montague* v. *Hanson* (1909), 38 Mont. 376, 99 P. 1063. See also *Bartholomew* v. *Grimes* (1912), 51 Ind. App. 614, 100 N. E. 12.

We regard as irrelevant appellant's arguments that he was under no duty to furnish a toilet for his customers and that one was available in the west end of the building. If there had been one, so labeled, in view of appellant, that fact might have been considered upon the question of contributory negligence. But the negligence of appellant was not in his failure to furnish a toilet but in leaving unguarded an opening which might become a trap in the area to which appellee was invited. He did not step out of the role of invitee when, responding to an urgent physical need, he entered in the belief that the areaway led to the toilet. *Pauckner* v. *Wakem, supra.*

*Standard Oil Co.* v. *Henninger* (1935), 100 Ind. App. 674, 196 N. E. 706, is not in point. The court held that appellant had discharged its full duty even to an invitee. The discussion as to invitation is therefor dictum. But it may be noted that the question there was whether any business relationship ever existed. Here the status of invitee was estab-

lished and the question is as to the extent of the invitation.

Contributory negligence as a matter of law is usually a troublesome question and this case is no exception.

An appellate court is loathe to substitute its conclusions for that of the trier who saw and heard the witnesses. It is difficult, if not impossible, to present on the printed page the facts as they appeared to the jury. Appellant in his brief says that "walking into a completely dark areaway without ascertaining what lay ahead" bars appellee's recovery. He adds that a curtain of darkness is just like a door or a gate barring entrance. But even in door cases of which there are many cited in notes in 20 A. L. R. 1147 and 42 A. L. R. 1098, courts have held that contributory negligence was not shown as a matter of law. There was a door, partly open but pushed to make a wider entrance, in *Rhodius* v. *Johnson* (1900), 24 Ind. App. 401, 56 N. E. 942, where a verdict for plaintiff was sustained. Darkness is relative. A curtain of darkness may be mere gossamer. The accident occurred at eleven o'clock in the morning. Appellant's photograph —Exhibit 2—taken at approximately the same time of day, shows shadows. The camera was directed in the way traveled by appellee from his car to the stairs. Its entrance even in the photograph has some appearance of a passageway. "The plaintiff was entitled to rely to a reasonable extent upon appearances, even though he misjudged the actual situation." *Skidd* v. *Quattrochi* (1939), 304 Mass. 438, 34 N. E. (2d) 1009, citing *Willis* v. *Taylor* (1906), 193 Mass. 113, 78 N. E. 774. The wide landing —29 inches— about which so much was said in oral argument, rather adds to that deceptive appearance. While appellee said he took but one step and then fell it may not have been a long

bold step as claimed by appellant, but a shorter step taken from a footing already beyond the line of the adjoining partition. So far as disclosed the areaway was merely a continuation of the floor without "threshold" to mark the division. In a negligence case with quite different facts we referred to "a twilight zone where reasonable minds may differ upon the question of negligence." *Pfisterer* v. *Key* (1941), 218 Ind. 521, 531, 33 N. E. (2d) 330, 334. The facts here bring the question of contributory negligence within that zone. Cases reaching similar conclusions are: *Rhodius* v. *Johnson, supra; Palmer* v. *Boston Penny Savings Bank* (1938), 301 Mass. 540, 17 N. E. (2d) 899, 120 A. L. R. 633; *Skidd* v. *Quattrochi, supra.* We think the evidence is sufficient to sustain the verdict and the court therefore did not err in refusing the peremptory instruction requested by appellant.

Error is assigned in the giving of appellee's instruction three. It was definitive, not mandatory, in substance stating that if appellee drove his automobile on appellant's "premises" to be repaired and that it was repaired, then appellee was an invitee while upon the "premises" for that purpose. At first glance this would seem to be an invasion of the province of the jury. Appellant's objection was not on that ground but because the instruction gave the jury to understand that if appellee "were on any part of the . . . premises he must be considered an invitee on all parts of the . . . premises." If the instruction stood alone there might be merit in the objection made. But at appellant's request five instructions were given which qualified the meaning of the word "premises" as used in appellee's instruction. All five were along the same lines. One declared that the "invitation did not extend to all of the . . . premises

but only to such parts thereof that was necessary to transact the business for which plaintiff was invited on said premises." Another stated that if the jury found "from the evidence that he was at the place he was injured on an errand of his own convenience, pleasure or curiosity, then your verdict must be for the defendant." Another, referred to *supra*, stated that when the invitation is implied by the nature of the business transacted between plaintiff and defendant, then such "invitation extends only to such part of the premises as are necessary for the conduct of such business." Considering these instructions together the jury could not have been misled to believe that the court thought or intended them to hold that the mere driving into the shop for repairs and the making of the repairs constituted an invitation to appellee to use all of the premises. For the same reasons there was no harmful error in giving appellee's instruction four.

Appellant's instruction ten was properly refused. It was based on appellant's argument, which we have already characterized as irrelevant, that there was no duty to maintain a toilet. It also went too far, as did instructions which were given, in making necessity the test of invitation.

There was no error in refusing appellant's instruction twelve telling the jury that a person in a place on business "has no right to wander about the premises for his own convenience, or pleasure" and that appellee "had no right to wander about the workshop inspecting machinery, tools or equipment." We have already set forth the only evidence as to appellee's movements. Curiosity did not take him to the place of his accident. He was not inspecting machinery. The instruction was not applicable to the facts and was properly refused.

An instruction that plaintiff was not required to prove his case beyond a reasonable doubt but only by a preponderance of the evidence was not erroneous.

Over objection the court permitted the complaint and answer to be introduced in evidence. If the pleadings contained admissions of the parties they were binding without such introduction. The practice is not to be commended for it unnecessarily encumbers the record but there was no harmful error.

A letter from appellant's attorney to appellee's attorney was admitted in evidence over objection. It was a denial of liability substantially on the grounds on which the action was defended. We do not see in it probative value on any issue but it was not harmful to appellant.

Appellant used two photographs in the examination of witnesses and later offered each in evidence. They were taken two or three weeks before the trial which occurred two and one-half years after the accident. One was admitted without objection. When the other was offered appellee's attorney objected stating, "That the only person who testified as to what this represented was the first witness of the defendant, Grasca, and he pointed out at least three particulars in which this picture differed from the condition on the 16th day of May, 1940." Appellant's attorney said that none of the differences was material and a colloquy ensued in the course of which the judge expressed the opinion that a photograph must be proved by the person who took and the person who developed the film "and then that it is a correct representation of the scene at the time in question." The objection was sustained and error is assigned. There may be

instances requiring testimony of the persons who took and developed the picture but ordinarily it may be identified as a correct representation by one who is acquainted with the scene depicted regardless of whether he had anything to do with the making of the photograph. Grasca, the only witness who attempted to testify concerning the accuracy of the photograph, said that it "also disclosed conditions as they were on May 16, 1940, except they may have been a little dirtier." In cross examination he admitted that several things shown in the picture were not then there including shelving, barrels, automobile cushions, and mufflers. Except for the statement of the trial judge we might readily draw the inference that he thought, as we think, that the testimony of the witness Grasca was not sufficient to show that the conditions at the time of the photograph were the same as when the accident occurred. But even if the ruling was incorrect we are unable to find harmful error. Both exhibits show the opening to the stairs. In the one admitted the camera is sitting closer to the stairway than in the one excluded. The latter shows a little more of the floor and some objects that do not appear in the former. In all essential details, however, the photographs are alike and, if either was more favorable to the appellant, he had the advantage because the one admitted shows more clearly a gate and signs which he testified were at the head of the stairway when the accident occurred.

In impaneling the jury the court properly overruled appellant's objection to a question of a talesman whether he was connected with any insurance company "engaged in insuring proprietors of places of business against damage resulting from

injury . . . " He had already stated that he did some insurance business. The inquiry was therefore natural and reasonable. His answer was in the affirmative and, after several other questions and objections upon which no error is assigned, he was excused by appellee. Appellant's only ground of objection was the statement that no insurance company was involved in this action. This statement did not foreclose inquiry into the character of the prospective juror's insurance business as tending to throw light upon his mental attitude with respect to the cause of action to be tried. If it should develop that he was engaged in writing public liability insurance or adjusting that kind of insurance claims appellee might conclude that he would be prejudiced in favor of appellant. The information might not afford ground for challenge for cause but it evidently was the occasion of the peremptory challenge afterward exercised by appellee.

We cannot hold that the verdict is excessive. The jury could have concluded from the evidence that appellee had a broken rib and a femoral hernia as a result of the fall. Though immediately following the accident he was absent from work only eleven days there is ample evidence permitting the inference that two and a half years later he had not recovered from and still suffered pain traceable to those injuries.

Judgment affirmed.

NOTE.—Reported in 51 N. E. (2d) 629.