18298

Perry PARKER, by His Guardian Ad Litem, Nona Mae Parker,
Respondent, v. STEVENSON OIL COMPANY, Appellant

(140 S. E. (2d) 177)

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, and *Paul A. Sansbury,* of Darlington, *for Appellant,*

*Messrs. James P. Mozingo, III,* and *D. Kenneth Baker,* of Darlington, and *Ernest L. Cook,* of Hartsville, *for Re-*

*spondent,*

January 28, 1965

BRAILSFORD, Justice.

The plaintiff, a thirteen year old boy, was injured by a fall into an unguarded grease pit on the filling station premises of the Stevenson Oil Company in Hartsville, South Carolina. This action for his injuries resulted in a verdict against the defendant oil company for $20,000.00 actual damages and $1,000.00 punitive damages. The trial judge refused defendant's alternative motions for judgment *n. o. v.* or for a new trial, but reduced the verdict for actual damages to $10,000.00 by an order *nisi,* to which plaintiff has acceded. The defendant has appealed, charging that the court erred in refusing its motions, seasonably made at the trial, for a directed verdict as to actual and punitive damages and in refusing its post trial motions for judgment *n. o. v.* or for a new trial.

The filling station, known as Shell Service Center, is located in the business district of the town of Hartsville at the southeastern corner of Fifth Street and Home Avenue. It faces north on Home Avenue with a shed and covered pumps on this side. It is equally accessible to traffic from the west, having gas pumps and an entrance to the building facing Fifth Street. The filling station lot is also open to pedestrian and vehicular traffic from the south through an alley or passageway behind stores fronting on Fifth Street.

The men's rest room is on the east side of the station. A raised cement strip, about four feet wide, is adjacent to the building across the front and along the sides. It is sometimes referred to in the record as a walkway or sidewalk. However, it was not kept open for this use, and, on the night in question, it was completely or partially blocked at several points by three automatic vending machines on either side of the front entrance, containing, respectively, cold drinks, cigarettes and crackers and by other obstacles.

The grease pit is also on the east side of the building, parallel with and about seven feet from the edge of the adjacent

concrete strip. It is located in an open parking area directly east of the rest room door, so as to be athwart the path of one approaching the rest room from the parking lot. With the knowledge and consent of defendant, this area was customarily used for after hours parking by patrons of a nearby movie house.

The front of the grease pit is approximately in line with the front wall of the filling station building. Four iron pipes or posts were permanently installed at the corners of the pit as supports for a chain barricade or enclosure. However, no such chain or barricade was in place on the occasion in question. The record affords no explanation of this omission, and offers no suggestion that the failure to guard the pit, or to provide any warning thereof, was inadvertent. Instead, defendant disclaims any duty to take precautions to make the premises reasonably safe for one in plaintiff's situation at the time of his injury or to warn him of any unsafe condition.

The accident occurred at about 8:30 P. M. on October 27, 1962, when plaintiff, accompanied by two other boys with whom he had attended the nearby movie, entered the premises of the defendant from Fifth Street intending to purchase drinks and to use the rest room. Plaintiff was not familiar with the station, and the location and availability of this accommodation had been made known to him by one of his companions. The boys decided to go to the rest room before buying drinks. As they walked under the shed and past the vending machines, the operator and another employee were at the front door preparing to lock it. The outside lights had been switched off, but the automatic vending machines were lighted and in service.[1] Because of the presence of the two men at the front door and the other ob-

---

1. The record does not contain direct evidence that the machines were in service or that the rest room door was unlocked. However, the existence of these facts and knowledge of them by plaintiff or his companions were assumed by the court. These assumptions were not challenged at the trial nor excepted to on this appeal and are not open to dispute here.

structions already referred to, the boys did not undertake to use the cement strip as a walkway. Instead, travelling abreast, they passed the corner of the building and additional obstructions in close proximity to it on the east. They then turned in a southerly direction toward the rest room door, which bore an identifying marker and was unlocked.[2] Almost immediately upon turning, the plaintiff fell into the front end of the unguarded pit, which, as already indicated, was approximately in line with the front or northern wall of the building.

In overruling defendant's motion for a directed verdict, the court held that the evidence raised an issue for the jury as to whether the plaintiff was an invitee on defendant's premises at the time and place of his injury, and, if this was his status, as to his right to recover damages. On the other hand, the court instructed the jury that its verdict must be for the defendant if it resolved the issue of plaintiff's status against him.

On this appeal, no challenge is raised to the court's instructions as to the test which the jury should apply in determining plaintiff's status on the premises, or to the instructions as to the law applicable should the jury conclude that plaintiff was an invitee; nor does the defendant challenge the sufficiency of the evidence to support an award of actual damages in this event. Therefore, the issue, on this aspect of the case, narrows to whether the evidence was legally sufficient to support the finding of fact, implicit in the verdict, that plaintiff was an invitee on defendant's premises at the time and place of his injury.

The term invitee is usually employed in premises liability cases as meaning the same thing as business visitor. As the term implies, this is the status of one who enters upon the premises of another at the express or implied invitation of the occupant, especially when he is upon a matter of mutual interest or advantage. The occupant owes

2. Ibid.

a duty to an invitee to exercise due care to keep the premises to which the invitation extends in a reasonably safe condition for his use. Typically, this duty is owed to a customer in a store or to a patron upon the premises of any other business open to the public. *Bruno v. Pendleton Realty Co.,* 240 S. C. 46, 124 S. E. (2d) 580, 95 A. L. R. (2d) 1333; West's South Carolina Digest, Negligence, Key 32; Prosser on Torts, 3rd Edition, Sec. 61; 38 Am. Jur., Negligence, Sec. 131; 65 C. J. S., Negligence, §§ 43 (1), 44.

The operator of a filling station, who displays merchandise for sale in automatic vending machines upon his exterior premises after regular business hours, invites entry upon such premises by prospective customers. His relationship to and duty toward one who enters with intent to make a purchase, like that of conventional storekeeper to customer, is unambiguously, that of occupant to invitee. However, the defendant invokes a logical and generally acepted limitation to the rule requiring the occupant to exercise due care to protect invitees from harm, which is that this duty applies only to those portions of the premises to which the invitation actually or apparently extends and during times included therein or apparently so. Counsel contend that plaintiff exceeded the bounds of the invitation under which he entered by proceeding, after hours, to an unlighted area, not held out by the defendant for the reception of customers, and on a mission related only to his own convenience and necessity. We do not think that this is the only reasonable inference which may be drawn from the evidence, which must be viewed in the light most favorable to the verdict in passing upon whether the issue was properly submitted.

The vending machines which attracted plaintiff and his companions were still in business when the accident occurred. The personal nature of the mission which engaged plaintiff at the time of his injury is not inconsistent with invitee status because an invitation to enter business premises includes an invitation to use toilet facilities

maintained by the occupant for the convenience of customers. *Haley v. Deer,* 135 Neb. 459, 282 N. W. 389; Prosser on Torts, 3rd Edition, p. 401; 65 C. J. S., Negligence, § 48, p. 540. The extinguishment of the outside lights did not necessarily terminate the invitation to customers to use the rest room which defendant provided for their convenience. The door to this accommodation was unlocked and bore an identifying sign. Presumably, an interior light was available to any patron who desired to make use of the facility. There were no signs or warnings to indicate that any portion of the premises was closed to customers.

Furthermore, the jury could have concluded that the absence of lights in this area was not noticeable to plaintiff or his companions until they rounded the corner of the building, inferentially, only an instant before plaintiff fell, too late to alert him that he was about to enter an area not intended for the use of patrons at this hour.

Finally, the defendant invited patronage of the machines after closing hours without laying out or suggesting routes of travel to or from them. It is inferable that the invitation was to enter from any point on Fifth Street to the west, Home Avenue to the north, or the alley to the south, whence patrons were free to choose their own course across defendant's exterior premises, no part of which was designated for or excluded from their use. There being no realistic boundaries and it being inferable that the grease pit was within or adjacent to reasonable courses of travel to the machines from some of the available points of entry, the inference could reasonably be drawn that plaintiff was injured within the area of invitation.

In *Dym v. Merit Oil Corporation,* 130 Conn. 585, 36 A. (2d) 276, recovery was allowed for grease pit injuries sustained after hours on the premises of the defendant oil company. The facts were similar in many respects to those with which we deal. This is illustrated by the following exerpts from the opinion.

"* * * The defendant contends, however, that the station was fully closed and gave this appearance; that the plaintiff should have known this; that she was a trespasser or at best a gratuitous licensee; and that she assumed the risk of entering and alighting from the car and was guilty of contributory negligence in her movements.

* * *

"* * * No sign was conspicuously displayed at the entrance to the premises indicating that the station was closed and that motorists were not to enter. The fact that the toilets were left unlocked at night might be found to indicate a purpose that they could be used at any time by persons who patronized the station.

"* * * It is difficult otherwise to explain the defendant's custom of leaving the toilet doors unlocked after closing hours. The determination of the status of the plaintiff, involving, as it did, findings and inferences which it was for the jury to make, was properly submitted to them as a question of fact. * * *" 36 A. (2d) 278.

See also *Silvestro v. Walz,* 222 Ind. 163, 51 N. E. (2d) 629, in which the court commented on and gave weight to the absence of any dividing line or boundary between the area to which plaintiff was admittedly invited and the nearby point of injury.

What has been said disposes of the first through third exceptions. The fourth exception charges that the court erred in refusing to hold that plaintiff was barred of recovery as a matter of law by his own contributory negligence and willfulness. It is contended that the plaintiff, without regard for his own safety, wandered in the darkness into an area with which he was not familiar and fell into the grease pit through his own negligence and recklessness. All of the testimony indicated that the area in question was dark. However, this is a relative term. There was sufficient visibility for plaintiff and his companions to see and avoid the obstructions at or near the corner of the building. They

could see the dark surface on which they walked, but, according to their testimony, the unmarked excavation which confronted plaintiff was not readily discernible. Instead, it just "looked like a black surface what we were walking on." Under all of the circumstances, the trial judge was clearly correct in refusing to direct a verdict on this ground, and in submitting this affirmative defense to the jury.

The fifth exception claims that there was error in submitting the issue of punitive damages to the jury.

We disagree. The defendant, apparently under a claim of right, maintained this pit unmarked and unguarded in a location where it was likely to cause harm to persons lawfully coming upon its premises. Whether, under the circumstances, its conduct was justifiable or culpable and, if the latter, the degree of its culpability were questions for the jury.

The last question argued in the brief relates to the amount of the verdict, which is claimed to have been so excessive as to show prejudice, etc., entitling defendant to a new trial. We do not find that this question has been fairly raised by an exception and, therefore, decline to consider it.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.

