18955

Mildred ORR, Respondent, v. J. K. SAYLOR and G. W. Saylor, d/b/a
Forest Lake Esso Service Center, Appellants.

(169 S. E. (2d) 396)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellants,*

*Messrs. Dallas D. Ball* and *Luther M. Lee,* of Columbia, *for Respondent,*

Aug. 27, 1969.

BRAILSFORD, Justice.

The plaintiff, Mildred Orr, while wearing rubber soled sneakers on a rainy day, slipped near the entrance to the grease pit at Forest Lake Esso Service Center and fell onto the steps by which the pit was entered. She sued J. K. Saylor and G. W. Saylor, the owners of the station, for damages for personal injury, and this appeal is by them from a judgment in her favor for $3,000.00. The only question involved is whether the court should have directed a verdict for the defendants because of the insufficiency of the evidence to establish actionable negligence on their part or because of plaintiff's contributory negligence.

At about noon on the day in question, plaintiff's automobile became lodged on a cement traffic divider at a shopping center on Forest Drive, near the City of Columbia. She walked, in the rain, across the highway to defendants' station for assistance. After an employee of the defendants dislodged the automobile, she requested him to drive it to the station and to inspect the underparts for damage. He drove from the shopping center, with her seated beside him, directly into the separately partitioned grease bay area of the station, where he parked the automobile over the grease pit.

Except for medical testimony, plaintiff was the only witness offered in support of her claim. She testified that the driver got out of the car without saying anything to her. She also got out of the automobile because she was

uncertain whether the car was to be raised or whether he was "going down." Quoting from her testimony:

"Q All right. Now, after you were in the station, go ahead and tell—starting from getting out of the car, go ahead and tell the jury what happened.

"A. Well, I got out of the car, and I heard a man saying something, so I walked to the front of my car, and when I walked to the front of the car, a fellow said something, and I said, 'I don't understand.' Well, I was standing —like this is the pit here (indicating), I was standing here (indicating), and my foot and my eyes and all must have seen the grease at the same time, but the next thing I know I am down in the pit.

"Q. Now, you say your foot and your eyes saw the grease at the same time?

"A. By the time my feet got situated, my eyes couldn't help me.

"Q. In other words, you saw it too late?
"A. I sure did."

She was again requested by her counsel to tell the jury "about when your foot slipped what happened."

"A. When I walked around to the front of the car, I heard somebody talking, and I saw—I guess my foot hit the grease and I saw the grease at the same time. It was too late for me to stop. My feet just went."

On cross examination, she stated, "I guess my foot hit grease, and the next thing I know, my head and my feet wouldn't work together."

Since any conflicts in the testimony have been resolved in plaintiff's favor and all of the evidence must be viewed in the light most favorable to her, we refrain from commenting on the testimony offered by defendants, except to say that it added no strength to plaintiff's case.

Plaintiff's testimony does not support the allegatation of the complaint that defendants had allowed grease to accumulate at the site of her fall. It leaves

us completely in the dark as to where the grease came from, how long it had been there, how much there was, whether it was a smear or a blob, and whether the defendants had an opportunity in the exercise of due care to discover its presence and remove it.

In *Gilliland v. Pierce Motor Co.,* 235 S. C. 268, 111 S. E. (2d) 521, a laundryman who slipped on a spot of oil while crossing a garage floor to make a delivery was denied recovery because he failed to sustain the burden of showing either that the oil was on the floor by the act of the defendant or that it had been there for a sufficient length of time to charge the defendant with notice of its presence. Assuming, without deciding, that defendants' duty to keep their premises reasonably safe for use by their patrons extended to the grease pit area, plaintiff's testimony in this case is similarly deficient.

Nor are defendants chargeable with negligence because their employee did not request plaintiff to leave the automobile before driving it into the grease bay and parking it over the pit. The simple visual inspection which he was about to make at her request would require only a short time, and he left her in a place of safety. He had no way of knowing that she would not recognize the obvious function of the grease pit and would leave the automobile against the possibility that it would be lifted into the air. He did not know that she had done so until she had already fallen. By her own testimony, she knew that she was in that area of the station where cars were taken to be lubricated, and was aware that she might expect to encounter grease or oil in this area. Hence, a warning to this effect by the employee would have been surplusage.

In his able dissent, Mr. Acting Associate Justice Weatherford urges with considerable logic that this court should re-examine its oft stated position with respect to the *res ipsa loquitur* rule. Perhaps, in an appropriate case, we should do so and consider whether we have heretofore,

while denying the rule by name, followed it in substance in applying the circumstantial evidence rule. We are not, however, convinced that this case is factually appropriate for this purpose. Furthermore, we have not been requested to re-examine our position on this appeal, and the issue has not been briefed by counsel.

The circuit court erred in failing to grant judgment for the defendants by direction because of the insufficiency of the evidence to establish that the defendants were guilty of actionable negligence.

Reversed.

Moss, C. J., and Lewis and Bussey, JJ., concur.

Wade S. Weatherford, Jr., Acting Associate Justice, dissents.

Wade S. Weatherford, Jr., Acting Associate Justice (dissenting).

Most respectfully, I ask my colleagues the privilege of expressing disagreement in this case upon two grounds: (1) I would affirm the jury verdict for plaintiff because the evidence is sufficient to support a finding of actionable negligence against defendant; (2) I would affirm the jury verdict under the rule of evidence known as *res ipsa loquitur* which, in my view, ought to and does in fact exist in South Carolina although rejected in name. In any event this case, rather graphically, illustrates for me the need for a clear and unequivocal adoption of this rule of evidence in the trial courts of this State as an extension and liberalization of the so-called "circumstantial evidence" principle.

When plaintiff's vehicle became stranded on a median, she employed defendant to remove it and then inspect the under side for damage. The weather was rainy and wet. After failing in an effort to drive the car from the median, the attendant, with the aid of a helper and use of a jack, succeeded in dislodging the vehicle. With plaintiff in the car beside him, he then drove the car to the premises of

defendant and directly onto and over a grease pit, access to which was by a stairwell at one end. The attendant got out of the automobile and went into the pit; he left plaintiff seated in the automobile, said nothing to her.

Plaintiff was a total stranger to the premises, lived quite a distance therefrom and had never stopped at the station. She was upset about possible damage to her car, a fact known to and appreciated by the attendant. She was unfamiliar with the equipment of the grease facility and did not know whether an hydraulic lift or a pit area below ground level was utilized for service. The clear import of her testimony is that after being left in the car by the attendant with no instructions whatsoever as to her safety she became frightened at the prospect of the car being raised into the air while she was inside and decided to get out. No rails were alongside the pit nor at the stairwell entrance. In this circumstance the unguarded stairwell at the front of the car was hardly more than an open hole in the ground. Plaintiff got out and walked around the front of the car where she slipped on grease, according to her testimony, and fell into the open stairwell, sustaining personal injury.

Defendant was charged, *inter alia,* with negligence in transporting plaintiff into a dangerous place and in failing to warn her of the danger. The rebuttal testimony of defendant directly contradicted plaintiff's version of the accident and in so doing impliedly recognized the danger of the grease pit. This conflict was for jury decision.

I deem a grease bay area to be one of inherent danger which is generally restricted and customarily off limits to invitees. Even without excessive accumulation of grease and oil such an area is hazardous. Dry grease-free concrete and asphalt become slick and more dangerous when wet. A grease bay area, in normal use, however clean, inevitably has some residue of oil and grease which when wet is more hazardous and dangerous than when dry. A wet, rain-soaked, automobile which is placed over a grease pit

has a vertical run-off of water which falls from its sides almost directly into the footpath around the car. There is a marked increase in the hazard and danger of the area when wet rather than dry. Therefore, on the occasion of this wet day and a wet automobile, even in the absence of proof of an accumulation of excessive grease, the pit area, with its open ungarded and unmarked stairwell, was a real danger. The independent decision of the attendant to transport plaintiff into this area without her consent or consultation with her coupled with his awareness of her upset condition and unfamiliarity with the premises required, in minimum compliance with the duty of reasonable care, some precautions for or instructions to plaintiff for her safety and a warning of the dangerous area into which she had been transported. The silence of the attendant, his total failure to say anything in the light of his actions, was an omission that constituted negligence.

A parallel exists between this case and the decisions of *Parker v. Stevenson Oil Company,* 245 S. C. 275, 140 S. E. (2d) 177, and the Indiana case cited therein ,of *Silvestro v. Walz,* 222 Ind. 163, 51 N. E. (2d) 629, particularly in the light of the defense testimony.

*Parker* involved an open grease pit and *Silvestro* an unguarded stairway and both decisions turned on invitee status. But on the duty of a business owner to use due care for safety of his invitee, it was said in *Silvesto:*

"If the duty here existed it cannot be doubted that the evidence was sufficient to show its breach by failure to bar, guard, properly light or otherwise warn of the danger of the open stair entrance, which without such precaution, might become a trap for the unwary."

The duty to warn of danger is clearly embraced within the standard of due care. *Bolen v. Strange,* 192 S. C. 284, 6 S. E. (2d) 466; *Kimbrell v. Bi-Lo, Inc.,* 248 S. C. 365, 150 S. E. (2d) 79.

As to the second ground, it is my strong conviction that use in South Carolina in proper cases of the salutary rule

of evidence known as *res ispa loquitur* would promote justice.

The burden of proof which the injured victim must meet in some negligence cases is so difficult as to be insurmountable and leaves a legal wrong without a remedy. An example is the relation of the business owner to his customer invitees and patrons. The business owner is not an insurer of the safety of his customers, but he does owe to them the duty to use reasonable care for their safety. The extraordinary problem for the negligently injured invitee is in meeting the difficult burden of proof necessary for recovery. He must show that the dangerous condition which caused his injury resulted from a negligent act or omission of defendant or that defendant had actual or constructive notice of the condition.

For purpose of argument, in this case if the liability of the defendant is confined to negligence in the single instance only of allowing an excessive accumulation of grease in the pit area which was the proximate cause of injury to Mrs. Orr, then Mrs. Orr, a total stranger to the premises, has the burden of proving that the dangerous accumulation of grease was attributable to a negligent act or omission of defendant or that defendant actually knew of the unsafe condition or that the accumulation of grease had been there long enough to charge him with constructive notice. In the light of Mrs. Orr's upset condition when she was taken on the premises and the fall which injured her and caused even further emotional distress and which necessitated a trip to the hospital, the burden of proof placed upon her is an almost impossible task. She or someone on her behalf in a post-injury period must undertake to secure evidence and witnesses to establish actual constructive notice of the owner. This principle as applied in South Carolina must be considered harsh.[1]

---

[1] For a most vivid description of the store of yesteryear as compared with the superstore of this day and a criticism of the rule of reasonable care in the modern super store, see the concurring opinion of Justice Terell, Florida Supreme Court, in Carl's Markets, Inc. v. De Feo, 55 So. 2d 182. An excerpt is found in 11 S. C. Law Quarterly, page 146, in a comment on the South Carolina case of Hunter v. Dixie Home Stores, 232 S. C. 139, 101 S. E. (2d) 262.

The injustice of this difficult and sometimes impossible burden has not escaped consideration by our Court in South Carolina. The principle of "proof by circumstantial evidence" has been so extended as to become almost identical with *res ipsa loquitur,* except in name. It is for this reason that the position of South Carolina in rejecting this rule of evidence should be reexamined in depth and the rule should be made operative in proper cases in the trial courts of South Carolina by judicial decree or legislative act.

The rule, almost universally recognized and applied, is defined in 65A C. J. S. Negligence § 220.2, page 512, as follows:

"The doctrine of *res ipsa loquitur,* which is recognized in almost all jurisdictions, is that, where the thing which caused an injury is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care."

Definitions vary considerably but this definition is significant because in a fairly recent South Carolina case language almost identical with this is quoted and relied upon, as will be noted. Misunderstanding of the rule and confusion between legal presumptions and permissive inferences of fact seem to have played a part in rejection by South Carolina.[2]

*Res ipsa loquitur* is a rule of evidence. It is not a rule of substantive law. It is a rule of necessity and common sense, resting upon a balance of probabilities, and growing out of

---

[2] Most, but not all, of the South Carolina cases during the last forty-odd years in which any reference is made to *res ipsa loquitur* are collected in footnote 88.50 of 65A C.J.S. Negligence § 220.3, page 520. In practically all of these cases the reference is quite brief and to the effect that *res ipsa loquitur* does not prevail in South Carolina. The exceptions are mentioned in the body of the opinion. This indicates, significantly, that during this era of momentous change, no reexamination of South Carolina's position has been made.

the ordinary and everyday experiences of life. While the literal meaning is "that the transaction speaks for itself" the rule is not a substitute for proof but a procedural aid in proof where direct evidence is unavailable. It is peculiar to the law of negligence and applies only to a limited class of cases. It is never germane to the issue of punitive damages.

It would have no relevance in any case unless it is shown that the management and control of the injuring agency is in defendant, thus giving him superior knowledge, and that the accident is one which in the ordinary course of human affairs does not occur without fault or negligence. While some jurisdictions apply a stricter rule, making an explanation or rebuttal by defendant mandatory, the favored view is that the rule permits an inference of fact only by the jury. Such inference may be rejected by the jury even without rebuttal or explanation by the defendant. And, except for unusual and extraordinary circumstances, the permissive inference is never the basis for direction of verdict. See annotation 97 A. L. R. (2d) 526.

South Carolina has, in effect, adopted the rule in several areas of negligence law by recognizing a *prima facie* case predicated solely upon a presumption or inference. This is true with respect to bailments, to relations of master-servant, passenger-carrier, bank-depositor and to other instances where negligence is the basis for the right to recover. *Bradford v. Woolworth Co.*, 141 S. C. 453, 140 S. E. 105; *Sutton v. Southern Railway Co.*, 82 S. C. 345, 64 S. E. 401; *Carroll v. South Carolina National Bank*, 211 S. C. 406, 45 S. E. (2d) 729.

Some jurisdictions, such as South Carolina, attempt to draw a distinction between *res ipsa loquitur* and circumstantial evidence. More logically others hold that the rule is simply a broader and more liberal application of the rule of proof by circumstantial evidence. It is difficult to distinguish the circumstantial evidence rule in South Carolina from *res ipsa loquitur*. 8 S. C. Law Quarterly 136.

The problem was placed in sharp outline more than sixty years ago, 1906, in the leading case of *Fleischman, Morris & Co. v. Southern Railway,* 76 S. C. 237, 56 S. E. 974, 977, 9 L. R. A., N. S., 519, where, speaking through Justice Woods, the Court said:

"* * * This rule is entirely reasonable. The facts surrounding the loss particularly the precautions taken against it, are usually known to the bailee or ascertainable by him. On the other hand, the owner of the property cannot be supposed to know the details of a warehouseman's business, for he is often hundreds of miles away. With the great modern development of the warehouse business, we venture to think the injustice of the rule which exempts a warehouseman from responsibility to the owner on the bald proof of loss or injury to the goods by fire, by theft, or otherwise, will become more and more apparent. In most cases, to require the owner to assume the burden of showing that the fire or theft was due to the lack of ordinary care is to impose an impossible task and place him more than ever at the mercy of the warehouseman. We are satisfied, therefore, to adhere to the somewhat exceptional rule laid down in this state, notwithstanding the great number of opposing authorities in other jurisdictions."

The above quotation was subsequently included in the Court's opinions by Acting Associate Justice Lide in the case of *Gilland v. Peter's Dry Cleaning Co.,* 195 S. C. 417, 11 S. E. (2d) 857, and by Justice Baker in *Albergotti v. Dixie Produce,* 202 S. C. 357, 25 S. E. (2d) 156, both of which opinions have pertinent comments on *res ipsa loquitur.* As long ago as 1926, Chief Justice Watts sought to apply the master-servant presumption to the slip and fall case in *Bradford v. Woolworth Co., supra.* Among the cases which clearly and firmly commit South Carolina to the substance of the *res ipso loquitur* rule of evidence are *Eickhoff v. Beard-Laney, Inc.,* 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010 (1942) and *Shepherd v. U. S. F.*

*& G.,* 233 S. C. 536, 106 S. E. (2d) 381 (1958), both opinions by Justice Stukes for a unanimous court. In *Eickhoff* Justice Stukes wrote:

"They frankly challenge the Court to adopt the generally accepted, but often misunderstood, rule of evidence commonly known as *res ipsa loquitur,* without which adoption they argue that the judgment in this case must be reversed for lack of evidence to sustain plaintiff's allegations.

"As is well known the Court of this State have consistently declined to subscribe to the theory mentioned. Possibly our last utterance on the subject is found in *Boylston v. Armour & Co.,* 196 S. C. 1, 12 S. E. (2d) 34, where it was expressly said that the doctrine is not of force here but it was held that the evidence in that case, of results rather than directly of a cause moving from the defendant's act, was sufficient for the jury to reasonably infer negligence."

But in *Shepherd,* a runaway automobile case, the Court quotes language and wording almost identical with the above quoted definition of *res ipsa loquitur* from 65A C. J. S. Negligence § 220.2, page 512. In reference to the quote, the Court said:

"It is realized that the last quoted text is close to, if it does not embrace, the doctrine of *res ipso,* which we do not accept; but it comports with our holding in *Brook v. Caroolina Scenic Stages,* 219 S. C. 360, 56 S. E. (2d) 468, 470, that in some instances at least, as there and as here, the fact that the evidence does not clearly disclose the cause of an accident does not necessarily exculpate the defendant. Quotation from the opinion is pertinent here: 'We think the circumstances heretofore set out, when considered together, are sufficient, in the absence of any explanation by the defendants, to warrant an inference that the collision was caused by the bus being driven to the left of the center of the highway. * * * While the difficulty of proof does not relieve plaintiff of the burden of proof, yet in a situation like this, the Court should take a very liberal view of the testimony."

\* \* \*

"Many other decisions upon the subject are reviewed in the annotation in 16 A. L. R. (2d) 979. From the footnote on page 984 we quote: 'The majority of the cases rest this conclusion (of liability) upon the doctrine of *res ipso loquitur*. However, similar results are sometimes reached in jurisdictions not recognizing that theory, and in a number of cases it has not been explictly mentioned.' "

Echoing the sentiment of Justice Woods more than half a century ago in *Fleischman,* Justice Bussey put his finger squarely on the problem in the dissent in *Wimberly v. Winn Dixie,* S. C., 165 S. E. (2d) 627, when he said "the instances are, indeed, rare in which a plaintiff can prove constructive notice by other than circumstantial evidence, regardless of how grossly negligent the storekeeper may have been."

I believe that many other jurisdictions in this country would reach the same conclusion I reach in this case including North Carolina under its cases of *Lee v. H. L. Green Co.,* 236 N. C. 83, 72 S. E. (2d) 33, and *Lanier v. Roses Stores, Inc.,* 2 N. C. App. 501, 163 S. E. (2d) 416.

The rule of *res ipsa loquitur* is a salutary rule of evidence utilized in some form in most jurisdictions of our country. With the inexorable advance toward a life wholly dependent upon complex technology the trend is even to give the rule a more liberal application. My concern is that South Carolina presently is following an inconsistent, double standard. Human rights are involved as well as property rights. I cannot see that an invitee who sustains personal injury on premises beyond his management and control is any more able to prove the negligence of the owner than a customer who delivers his clothing to a laundry where they are damaged or his property to a warehouse where it is damaged. Yet there are strong presumptions which aid in the recovery of the property damage and none which aid in recovery for human damage. I think the instant case of Mrs. Orr is an example. I would have invoked *res ipso loquitur* in her

case, out of necessity, as an aid in proof, and in furtherance of justice.

The law cannot remain immutable any more than life and its service to society depends on its ability to meet the challenges of change. For example, the law of products liability is moving in the direction of strict liability to the consumer, as I think it should, and away from privity, implied warranty and negligent manufacture. The law of negligence, too, must take note of the patron in the super store of today, the patient under medical care with intricate devices in a highly specialized age, the passenger in the airplane, the victim of explosions and a myriad of other complex areas of life. I believe the time has come for South Carolina to permit its trial courts to make use of a salutary rule of evidence in the law of negligence.

I would affirm the judgment and in addition adjudge that the trial courts of South Carolina have the inherent power to utilize the rule of evidence called *res ipsa loquitur*.