## 73930. FOOD GIANT, INC. v. WITHERSPOON.
## 73931. ALTERMAN PROPERTIES, LTD. et al.
## v. WITHERSPOON.
### (359 SE2d 223)

POPE, Judge.

Appellee Minnie L. Witherspoon brought suit to recover damages for injuries incurred when she tripped over a metal strip installed between two metal posts on a concrete sidewalk located between the premises occupied by appellant K-Mart and formerly occupied by appellant Food Giant, Inc., in a shopping center owned by appellant Alterman Properties, Ltd. Upon denial of their motions for summary judgment and certification of immediate review by the trial court, appellants' applications for interlocutory appeal were granted by this court.

Appellee's affidavit and deposition submitted in opposition to appellants' motions for summary judgment showed that between 5:30 and 5:45 p.m. on February 6, 1983, she left Food Giant without making a purchase to go to K-Mart to buy some hose. As was her custom, she walked through a pedestrian opening in the rails between the two stores designed to hold shopping carts, tripped over the metal strip and fell. She looked to see what she had fallen over and saw that the metal strip was loose. In her previous visits to the shopping center, which she thought was about twice a week for seventeen years since the stores had opened, she "couldn't estimate the times" she had passed through this area. She had never noticed the metal strip to be broken before, and the first time she saw it was broken was after she fell. She did not know "if it was already up" when she tripped but "afterwards it was up." The strip was slanting up about one inch on the broken corner. Although it was not dark at the time, the light was "dim." She knew the metal strip was there, having seen it before, and nothing was different or peculiar that happened to her before she reached the area on the occasion of the fall, or which distracted her attention. She testified by deposition that nothing prevented her from stepping over the metal strip, nothing prevented her from looking down at it or blocked her view, and that she could have seen it prior to the time she tripped on it if she had looked down.

Immediately after her fall appellee reported the incident to the assistant manager of K-Mart, Lanier Stuckey, who accompanied her back to the area. Appellee testified that Stuckey attempted to mash

the strip back down flat with his feet, and that she stated to him that he "ought to have this fixed before somebody gets hurt. And he said, 'I told them and they're not going to fix it.' He said it's been here for sometime, like this for sometime." However, K-Mart's general store manager submitted an affidavit swearing that he had held the position for the year preceding appellee's fall and was aware of the metal strip in question, but that at no time prior to hearing about her fall did he "personally know of or hear about anyone tripping, stumbling or hurting themselves in any way" as a result thereof, nor did he "see, know of, or hear about the metal strip springing upward off the concrete, or have any reports made to him by anyone concerning any complaints, comments or problems with this metal strip springing upward or for any other reason." While the affiant was manager of K-Mart, company procedure required that any defect or problem with the building premises brought to the attention of any of the approximately 100 employees under his supervision be reported to him. He was also required to report any such defect or problem to the regional office, which would apprise the owners, but having had no problems concerning the metal strip ever brought to his attention he made no such report.

Appellee presented the deposition of an expert witness with a background in mechanical engineering who examined the site of the fall in April of 1985. Based on his observations at that time he was of the opinion that the metal strip had never been welded properly to the vertical pipe rail, which permitted the strip to spring free and "created a potential" for someone to trip and fall over. The strip was originally ½ inch high and in April of 1985 was "about one inch high" on the broken side. From the visible surface condition it appeared to have been broken or corroded for some years, "certainly a year or more." However, the witness could not set an exact date.

By later affidavit the expert witness swore that he subsequently visited the scene in order to determine the effect of artificial lights "under dimming conditions between dusky dark and darkness," conditions verified by appellee as "approximately the same" as when she fell. He averred that "[t]he illumination clearly revealed the concrete walkway, metal pipes and rails between both places of business, the passageway between the two stores, the existence of hand carts being utilized and parked in front of both stores," and that as a result of his observations and appellee's statements as to the comparative lighting conditions it was his opinion that at the time she fell the illumination on the premises "was adequate for customers of either place of business to safely move along the walkway between the two stores." It was his further opinion that these lighting conditions "would make it impossible for a pedestrian . . . to see and appreciate any extension of the metal strip above the concrete walkway and to observe the sepa-

ration of the weld previously described." Based upon his reading of appellee's affidavit and deposition testimony in regard to showing the "sprung up condition" of the metal strip after her fall, the statement of the K-Mart assistant manager to appellee concerning the condition of the strip prior to the date of appellee's fall and additional information concerning the length of time the strip and posts had been in place, the expert witness opined "that the weld between the small vertical pipe and metal strip was defective at the time of installation; [and] that installation of the metal strip occurred when the steel pipe railings and posts were installed during or prior to 1973." It was his further opinion "(1) that the metal strip had separated . . . several months and even years before February 6, 1986 [sic]; (2) that after the separation of the defective weld the metal strip would spring up from the concrete walkway thereby creating a hazard to passing pedestrians; (3) that all owners and occupiers of the premises who swept, cleaned and maintained the area at or near the passageway on a regular basis knew or should have known that the metal strip had separated, would spring up and create a hazard to persons using the passageway and should be removed or rewelded prior to February 1983; (4) that the condition of the metal strip which [he] observed and measured in April 1985 was a hazard at that time and would cause pedestrians to trip and fall; (5) that on the evening of February 6, 1986 [sic] the metal strip was extending as high or higher above the concrete surface than the height measured in April 1985 and that such condition was a hazard to persons walking in the area."

### Case No. 73930

1. We first consider appellant Food Giant's argument that the trial court erred in denying its motion for summary judgment because, at the time of appellee's fall, it no longer leased or occupied the premises on which appellee was injured. Whether Food Giant was an "owner or occupier of land" as provided in OCGA § 51-3-1 turns on whether Food Giant exercised control of the subject property as of the date of appellee's injury. As to that issue, the record shows that on January 17, 1983, almost 3 weeks prior to appellee's fall, appellant Food Giant terminated its lease to the subject premises and sold its inventory to J & J Park, Inc. who assumed operation of the grocery store. The record also shows, however, that Randy Giles, a former manager and employee of Food Giant, "continued to work at the store from January 17, 1983 for a period of no more than two (2) weeks . . . to assist Mr. Park following the sale of the store to Mr. Park."

" 'Whether a particular appurtenance or instrumentality is under the control of an owner or occupant is usually a question of fact.' [Cit.]" *Scheer v. Cliatt*, 133 Ga. App. 702, 704 (212 SE2d 29) (1975).

In the case sub judice, however, there is no evidence that appellant Food Giant exercised any control over the subject premises at the time of appellee's fall; indeed the only evidence which we find remotely probative of this issue is that one of Food Giant's employees remained on the premises "for no more than two weeks" to assist the new owners.[1] However, the record does not show that any Food Giant employee remained at the time of appellee's injury or that the employee who remained to assist Mr. Park exercised any manner of control over the premises once J & J Park, Inc. assumed control of the grocery store. Accordingly, no genuine issue of material fact remained as to Food Giant's control of the premises, and the trial court erred in denying appellant Food Giant's motion for summary judgment. Cf. *Gregory v. Trupp*, 171 Ga. App. 299 (319 SE2d 122) (1984).

### Case No. 73931

2. As to the remaining appellants, we agree with the trial court's finding that summary adjudication was improper in the case sub judice. "The basis of liability of an owner to an invitee who is injured is the superior knowledge of the owner of the existence of a condition that could subject the invitee to an unreasonable risk of injury. It is when the perilous instrumentality is known to the owner or occupant and *not known* to the person injured that a recovery is permitted." (Citations and punctuation omitted.) *Globe Oil Co. v. DeLong*, 182 Ga. App. 395, 396 (356 SE2d 47) (1987). Appellants in the case sub judice argue, however, that appellee's claim must fail because she has failed to show both " '(1) fault on the part of [appellants], and (2) ignorance of the danger on the part of the [appellee.] (Cit.)' *Pound v. Augusta Nat.*, 158 Ga. App. 166, 168 (279 SE2d 342) (1981)." *Shackelford v. DeKalb Farmer's Market*, 180 Ga. App. 348, 349 (349 SE2d 241) (1986).

Turning first to appellee's knowledge of the danger presented by the improper weld between the metal strip and post, appellants rely on appellee's unequivocal testimony that she had traversed the area many times before, that she was aware of the existence of the metal strip and that she could have seen the metal strip had she looked down, which appellee admitted she did not do until after she fell, in order to establish appellee's equal knowledge of the metal strip. We agree with appellants that these facts establish that appellee knew

---

[1] In so finding, we expressly reject appellee's contention that the fact that the Food Giant sign was displayed on the premises at the time of her fall is also pertinent to this issue. Rather, Mr. Park testified that he did not immediately change the sign because he had other, more pressing problems to contend with during the first few months after the change in ownership. Thus, appellee has failed to show, and we decline to find, this fact probative as to the issue of control.

there was a metal strip between the posts. However, in our opinion, the critical inquiry is not whether appellee had knowledge of the existence of the metal strip, which she clearly did, but whether she had knowledge of the existence of the danger created by the possibly defective weld between the metal strip and post. " 'Knowledge of defects' should not be confused with 'knowledge of danger.' " *Firestone Svc. Stores v. Gillen*, 58 Ga. App. 782 (1) (199 SE 853) (1938); *Shackelford*, supra at 351. "The crucial question is whether [appellee] should have had a full appreciation of *the danger*, and . . . in the exercise of ordinary care she should have avoided the injury to herself." (Citations and punctuation omitted.) Id.; see also *Stouffer Corp. v. Henkel*, 170 Ga. App. 383 (1) (317 SE2d 222) (1984). In this regard, we are persuaded by the opinion of appellee's expert witness that under the lighting conditions present at the time of appellee's fall, it would have been impossible for appellee, or in fact for anyone else, to appreciate the danger created by the improper weld, or even to detect the separation created between the weld and post, "except through close inspection such as the observer getting down on their [sic] knees to look at the metal strip. . . ." Under these circumstances, we believe the trial court correctly concluded that a question of fact existed as to whether "(appellee) should have had a full appreciation of the danger, and that in the exercise of ordinary care [s]he should have avoided the injury to [her]self." *Globe Oil*, supra at 396; *Shackelford*, supra at 351; *Stouffer*, supra at 384.

However, we believe a somewhat more difficult question exists as to whether appellants' knowledge of the danger was superior to appellee's. Again, however, we are persuaded by the averments of appellee's expert "that all owners and occupiers of the premises who swept, cleaned and maintained the area at or near the passageway on a regular basis knew or should have known that the metal strip had separated, would spring up and create a hazard to persons using the passageway and should be removed or rewelded prior to February 1983."[2] Appellants contend, however, that appellee's expert's opinion must be disregarded because it was based on inadmissible hearsay, to wit: K-Mart's assistant manager's statement to appellee that "I told them and they are not going to fix it [and] it's been . . . like this for sometime." However, we find "no merit in [appellants'] contention that the statement of [Lanier Stuckey] to the [appellee] was incompetent hearsay of no probative value. The statement followed [appellee's] [trip] and . . . fall so closely as to be free of afterthought, was not of a self-serving nature and was admissible as part of the res gestae.

---

[2] It is well established that summary judgment may be successfully contested by the use of opinion evidence. *Morris v. Pulliam*, 168 Ga. App. 442 (2) (309 SE2d 423) (1983).

[Cits.]" *Joyner v. William J. Butler, Inc.*, 143 Ga. App. 219, 220 (237 SE2d 685) (1977); accord *Tenney v. Mobil Oil Corp.*, 133 Ga. App. 631 (1) (211 SE2d 900) (1974).

Moreover, a review of appellee's expert's affidavit shows that he did not form his opinion solely on the basis of the assistant manager's statement, but in addition thereto conducted his own independent examination, as well as relying on appellee's affidavit and deposition. Thus, in addition to the statement of K-Mart's assistant manager showing actual knowledge of the dangerous condition, we also find appellants had constructive knowledge of the dangerous instrumentality. Constructive knowledge may be established by showing that the dangerous condition had been there for such a time that ordinary diligence by the appellants should have effected its discovery. *Bright v. Food Giant*, 177 Ga. App. 641 (340 SE2d 272) (1986). In the case at bar, "[t]here was evidence of [an improper weld between the metal strip and post,] and that this defective condition had existed for a considerable period of time. This evidence [presented a question of fact] that the [appellants] had been afforded a reasonable time within which to inspect and remove the hazard, and thus knowledge of the condition was imputable to the [appellants]." *Great A & P Tea Co. v. Turner*, 180 Ga. App. 533, 534 (349 SE2d 537) (1986).

3. We decline to order appellee to pay the costs of the supplemental record which she designated to be transmitted on appeal, as requested by Food Giant, since it was not unnecessary or superfluous to the issues involved.

*Judgment affirmed in Case No. 73931 and reversed in Case No. 73930. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JUNE 30, 1987.

*Donald R. Andersen, Deborah A. Finnerty*, for appellant (case no. 73930).
*David D. Rawlins*, for appellants (case no. 73931).
*C. James Jessee, Jr.*, for appellee.