Robert MARKLE, Appellant–Plaintiff,

v.

HACIENDA MEXICAN RESTAURANT, Prairie–Jackson Corporation, Miller Monuments, Inc., M.E. Miller Testamentary Trust, Easy Shopping Place Businessmen's Association & John Doe, Appellees–Defendants.

No. 20A04–8910–CV–00461.

Court of Appeals of Indiana, Fourth District.

May 2, 1991.

---

William J. Cohen, Elkhart, for appellant-plaintiff.

Joseph J. Jensen, May, Oberfell & Lorber, Patrick J. Higgins, Jr., Feeney, Stratigos & Higgins, South Bend, for appellees-defendants.

MILLER, Judge.

Robert Markle, Plaintiff-appellant, appeals the grant of a summary judgment in favor of Hacienda Restaurant, Prairie Jackson Corp., Miller Monuments, M.E. Miller Testamentary Trust and Easy Shopping Place Businessmen's Association (collectively referred to as the Shopping Center), Defendants–Appellees. Markle claimed he was injured in the parking lot of Easy Shopping Place Shopping Center and alleged that the Shopping Center's negligent maintenance of the parking lot led to his injuries. The trial court determined Markle was a licensee at the time he was injured. Therefore, the only affirmative duty the Shopping Center owed to Markle was to refrain from willfully or wantonly injuring him. The court then granted summary judgment in favor of the Shopping Center. Markle now appeals, arguing that the question of his status at the time of the injury—invitee or licensee—is a question of fact, making summary judgment inappropriate. He also requests this court to abandon the common law distinction between invitee and licensee.

We reverse, holding that Markle's status at the time of his injury is a question of fact. Therefore, summary judgment should not have been granted.

## FACTS

These facts are not disputed: On July 11, 1986, Markle, a salesman for Ron's Painting, was returning to Elkhart, Indiana, af-

ter making sales calls, when he decided to eat at the Hacienda Restaurant in the Shopping Center in Elkhart. When he turned into the parking lot, he noticed Tim Lusher, a friend and co-worker, sitting in his truck in the parking lot. Markle stopped his car next to Lusher's truck, which was parked in a marked parking spot at the end of a row of parking spaces. When Markle pulled up next to it, he was not in a marked parking spot. Markle asked Lusher if he would take a twenty-five pound piece of steel that Markle had in his car to work the next morning. Lusher agreed, and Markle got out of the car to move the steel from his car to Lusher's truck. As he was lifting the steel into Lusher's truck, Markle stepped into a chuckhole with his right foot. He fell, injuring his knee.

On February 12, 1987, Markle brought suit against Hacienda, Prairie Jackson Corporation as owners of the Shopping Center, and John Does. He amended his complaint in February, 1988, to include Miller Monument, Inc., and M.E. Miller Testamentary Trust as parties, alleging the parties had an ownership interest in the shopping center. The Elkhart Superior Court granted summary judgment in favor of the Shopping Center on September 6, 1989. The court entered the following order:

"On April 27, 1989, this cause came on for hearing on a Motion for Summary Judgment by defendants. The facts are as follows: On July 11, 1986 the plaintiff, Robert Markle, went to the Easy Shopping Place Center to eat at the Hacienda Restaurant. When the plaintiff arrived at Easy Shopping Place he saw a fellow employee in the parking lot. The plaintiff had a piece of sample steel that he wished to transfer from his car to the fellow employee's pickup truck. The plaintiff stepped in a chuckhole with his right foot while he was putting the steel from his car into the pickup truck. The plaintiff allegedly sustained injury as a result of the fall.

"The central issue in this case is whether the plaintiff is an invitee, trespasser, or licensee. *Barbre v. Indianapolis* [sic] (1980) Ind.App., 400 N.E.2d

1142. The duty owed by an owner or occupant of land to one coming on the premises depends largely on the relationship between them. *Fort Wayne National Bank v. Doctor,* (1971) 149 Ind. App. 365, 272 N.E.2d 876; *Olson v. Kushner,* (1965) 138 Ind.App. 73, 211 N.E.2d 620. Under Indiana law, an invitee is a person who goes onto the land of another at the express or implied invitation of owner or occupant either to transact business or for the mutual benefit of invitee and owner or occupant. *Clem v. United States,* 601 F.Supp. 835 (1985). A licensee is one who enters premises of another for his own convenience, curiosity, or entertainment. *Id.* at 836.

"The facts of this case show the plaintiff entered the defendant's premises as an invitee. This is clearly demonstrated by the plaintiff's intention to eat at the Hacienda Restaurant. However, once the plaintiff decided to move the steel from his car, his status changed to that of a licensee. The transferring of the steel was of no benefit to the owner of the premises, but rather the action was of benefit to the plaintiff and his employer. It is possible for a person's status to change once he has entered the land of another. *Standard Oil Company of Indiana v. Scoville,* 132 Ind.App. 521, 175 N.E.2d 711 (1961).

"The plaintiff cites *Silvestro v. Walz,* (1943) [222] Ind. [163], 51 N.E.[2d] 629 as support for his case. The plaintiff's argument is that the main relationship between plaintiff and defendant was that of invitee and the transferring of the piece of steel was incidental to the main relationship of the invitee. The *Silvestro* case is clearly distinguishable from the case at bar. The Indiana Supreme Court held the defendant liable because defendant should have reasonably expected invitees to wander the entire business premises. The question is whether the defendant in this case could have reasonably expected plaintiff to transfer steel in this parking lot.

"Where controlling facts are undisputed, the determination of the status is for

the court to determine. *Standard Oil, supra.* The plaintiff was not performing an action incidental to his primary intention when he entered the premises. An incidental task is an instance whereby a business invitee does something which he could reasonably be expected to do under the circumstances. The deviation from his main intention when he entered the business premises is only slight. For example, in the *Silvestro* case, the plaintiff used the rest room facilities while waiting for car repairs. In that case, the owner of the premises could have reasonably expected the business invitee to do this.

"The transferring of the steel was not incidental to the plaintiff's main purpose. The facts of the case at bar more closely resemble the facts of the *Standard Oil* case, *supra.* The plaintiff in the case at bar changed his status once he entered the premises. The facts of this case are undisputed.

"A summary judgment motion may be entered only where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *First Savings and Loan Ass'n v. Treater* [*Treaster*], (1986) Ind. App., 490 N.E.2d 1149.

"The Court now holds that the plaintiff held the status of licensee at the time of the accident. The only affirmative duty a landowner owes a licensee is to refrain from willfully or wantonly injuring him in a way which would increase the licensee's peril. *French v. Sunburst Properties Inc.,* (1988) Ind.App., 521 N.E.2d 1355. There being no material dispute as to the facts, as a matter of law, summary judgment must be granted for the defendant."

(R. 110–12).

### DECISION AND DISCUSSION

■ When we review a motion for summary judgment, we apply the same standards employed by the trial court. Ind. Trial Rule 56(C), *Travel Craft v. Wilhelm Mende GMBH* (1990), Ind., 552 N.E.2d 443. Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The court must liberally construe all evidence in favor of the non-movant. Even if there are no conflicting facts, summary judgment is inappropriate where the undisputed facts lead to conflicting inferences. *Id.*

■ In Indiana, the status of a person when he is injured on the premises of another determines the duty owed to that person by the owner of the property. *Barbre v. Indianapolis Water Co.* (1980), Ind. App., 400 N.E.2d 1142. A person entering the land of another is either a trespasser, a licensee or an invitee. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637. A landowner owes a trespasser the duty to refrain from willfully or wantonly injuring him after discovering his presence and owes a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. *Id.* However, a landowner owes an invitee a duty to exercise reasonable care for the invitee's protection while the invitee is on the landowner's premises. *Id.*

In *Burrell,* our supreme court was faced with the question of how to determine whether one entering the land of another is an invitee. Burrell and Meads were friends who, over the years, helped each other perform various tasks. One afternoon, Burrell worked on his car in Meads' garage. As Burrell was preparing to leave, Meads told Burrell he would be installing a drop ceiling in the garage later that day. Burrell agreed to help. Later, Burrell climbed a ladder to remove some items which were stored on top of the garage rafters. He was injured when he fell to the floor of the garage from the rafters.

Burrell sued Meads for negligence, and the trial court granted summary judgment for Meads. This court affirmed, holding that Burrell, a social guest, was a licensee at the time of his injury and that Meads

owed him only the duty to refrain from willfully or wantonly injuring him or acting in a way to increase his peril.

Our supreme court vacated this court's decision, holding that invited social guests are invitees and are entitled to a duty of reasonable care from landowners. In reaching its decision, the court examined the two tests which have been used by Indiana courts in determining invitee status—the "economic benefit test" and the "invitation test". The theory behind the "economic benefit test" is to impose affirmative obligations on the landowner only in exchange for some consideration or benefit. *See, e.g., Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821; *Standard Oil Co. of Indiana v. Scoville* (1961), 132 Ind. App. 521, 175 N.E.2d 711. The court rejected the "economic benefit test" and instead adopted the "invitation test" as defined in the Restatement (Second) of Torts § 332:

> "(1) An invitee is either a public invitee or a business visitor.
>
> "(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> "(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

Restatement (Second) of Torts § 332, quoted in *Burrell, supra,* at 642. Thus, an examination of the invitation itself must be the first step of any inquiry into invitee status. *Burrell, supra,* at 641.

Markle argues that it is undisputed that when he entered the parking lot, he was an invitee and that a trier of fact could infer from the facts that his actions were incidental to his main reason for coming to the Shopping Center. After all, he argues, friends often see each other in the local shopping center and may talk to each other or conduct some type of business—such as stopping to write a check to one whom he owes money or transferring packages from one car to another. He argues that a jury could find that the Shopping Center could

have reasonably expected such a routine, incidental action; therefore, his status did not change from that of an invitee to that of a licensee. He cites *Silvestro v. Walz* (1943), 222 Ind. 163, 51 N.E.2d 629, to support his argument.

In *Silvestro*, the plaintiff was injured when he went beyond the repair area of the defendant's car repair shop in search of a washroom while waiting for his car to be repaired. The court held that although the plaintiff was not engaged in activity which directly benefitted the defendant, his trip to the washroom was merely incidental to his reason for being at the shop. The court reasoned:

> "A customer is invited to all parts of the premises that may reasonably be expected to be used in the transaction of the mutual business, those incidental and those necessary.
>
> "Nor would it seem unreasonable to hold that the owner of the premises should anticipate what is usually and customarily done by an invitee within the scope of, and to carry out the purpose of, the invitation.
>
> "The proprietor of any automobile repair shop may reasonably expect that his customers will not sit or stand in one place awaiting completion of the repairs. Appellant could not be blind to this common practice."

*Id.* at 171, 51 N.E.2d at 632 (citations omitted). Thus, the court focused on the invitation extended by the car repair shop owner to his customers instead of whether the shop owner received a direct benefit from the plaintiff's action to determine whether the plaintiff was an invitee or a licensee. The court concluded that a visitor to another's property does not lose his status as an invitee as long as the visitor is engaged in activity reasonably related—or incidental to—the invitation extended by the owner.

The Shopping Center, however, argues that the activity in which Markle was engaged when he was injured was purely for his own benefit and convenience and not for the mutual benefit of Markle and the Shopping Center. Further, the Shopping Center argues that the parking lot was

held open for parking for customers of the tenants of the Shopping Center, as evidenced by a posted sign which limited parking to customers only. When Markle transferred the piece of steel from his car to Lusher's truck, he was not a customer of any of the Shopping Center tenants. The Shopping Center also argues that Markle was using the parking lot for a purpose other than that for which the lot was held open to the public. Finally, the Shopping Center argues that Markle's activities are substantially different from the acts in which the plaintiff in *Silvestro* engaged. Therefore, Markle's action could not be considered incidental to his invitation.

First of all, we note that the Shopping Center's first argument centers on economic benefit, which, under *Burrell,* is not the proper focus of the discussion. However, the Shopping Center's other arguments center on the invitation, or its reason for holding the lot open.

■ We agree that even though a visitor may be an invitee when he comes on to the property, his status may change to that of a licensee while he is on the premises if the use to which he puts the property does not correspond to the owner's reason for holding the property open. *See, e.g., Hoosier Cardinal Corp. v. Brizius* (1964), 136 Ind. App. 363, 199 N.E.2d 481 (holding that although workman removing a conveyor belt from defendant's property was an invitee, he stepped out of that role when he made an unusual, unanticipated or improbable use of structures on the defendant's property).[1] *See also* 62 Am.Jur.2d *Premises Liability* §§ 105, 107 (1990).

■ Thus, an invitation may be limited as to the manner in which the invitee may use the premises:

"An invitation to come on premises for one purpose does not invite entry for all purposes. The status of an invitee continues *only as long as he is using the premises for a purpose reasonably intended by the invitation, and when used for another purpose the invitee loses the status of invitee.* The invitee must use the owner's premises in the usual, ordinary, and customary way.

---

1. *See also Dry v. Ford* (1960), 238 Miss. 98, 117 So.2d 456 (holding that the plaintiff, who was helping his employer install a dimmer switch in the employer's truck on the defendant's property, was a licensee when he was injured, because, even though he had gone to the defendant's car repair shop with his employer to purchase the switch, and was therefore an invitee at that time, his status changed once he and his employer decided to install the switch themselves when they learned that the mechanics would not have time to install it until the next day); *Gavin v. O'Conner* (1923), 99 N.J.L. 162, 122 A. 842 (holding that injured person was not an invitee when he was killed swinging from a clothesline because, although he was impliedly invited to play in the yard, he was not using the clothesline in a manner consistent with the owner's purpose for erecting the line and was therefore a licensee at the time of his injury); *Bird v. Clover Leaf–Harris Dairy* (1942), 102 Utah 330, 125 P.2d 797 (holding that although employee was clearly an invitee to the extent he worked at defendant's dairy, his use of the premises—parking a car in an area forbidden by the defendant—was not using the property in the usual, ordinary and customary way; therefore, when the car was damaged, the employee was a licensee as a matter of law); *Robbillard v. Tillotson* (1954), 118 Vt. 294, 108 A.2d 524 (holding that although a husband and his wife were invitees while buying something at defendant's service station, they could no longer be considered invitees when the husband, after concluding his business, waited in the car in the parking lot of the service station, while she conducted business at another location).

The trial court cited *Standard Oil Co. of Indiana v. Scoville* (1961), 132 Ind.App. 521, 175 N.E.2d 711, for the proposition that a person's status can change once he is on the premises of another. Scoville had gone into Standard Oil's bulk plant in Bloomington, Indiana, to pay his gas bill. After parking his car in the lot, Scoville ascended a flight of stairs into the building, and went to the office to pay the bill. He returned to his car safely, but returned to the office to discuss a personal matter with an employee. Upon returning to his car the second time, Scoville fell on the steps and was injured. The trial court granted judgment in favor of Scoville. This court reversed, holding that because Scoville returned to the office for his own convenience and not to transact business, he was clearly a licensee at the time of his injury. *Scoville,* however, is distinguishable from the case at bar. First of all, the court there focused on the "economic benefit test" which was expressly rejected by our supreme court in *Burrell.* Secondly, there were two distinct entries into the building for two distinct purposes. Here, however, Markle was injured on his original trip to the Shopping Center.

"The inviter is under a duty to keep the premises which are within the scope of the invitation safe for all uses by the invitee, and he is not bound to keep them safe for uses which are outside the scope and purpose of the invitation, for which the property was not designed, and *which could not reasonably have been anticipated, except where he is present and actively co-operates with the invitee in the particular use of the premises.*"

65 C.J.S. *Negligence* § 63(52) (1966) (emphasis supplied, footnotes omitted).

Here, it is not disputed that, because Markle originally went into the Shopping Center to eat at the Hacienda, he was an invitee when he first entered the parking lot. However, Markle's status—invitee or licensee—at the time he was allegedly injured is disputed. In other words, were Markle's business activities—taking a piece of steel from his car to put in a friend's truck—activities which the Shopping Center could reasonably anticipate from customers coming to their property and which could be considered incidental to its invitation to customers to park in its lot and shop in its stores?

We do not agree with the Shopping Center's argument that Markle was acting entirely outside of the scope of the Shopping Center's invitation. This is not a situation where Markle went into the parking just to give his friend the piece of steel he had in his car. Rather, the evidence is undisputed that Markle went into the parking lot to eat at the restaurant—a reason clearly within the scope of the invitation. The question that must be asked therefore, is whether Markle's activity was merely incidental to this purpose. Under *Silvestro, supra,* this is a question of what could be reasonably expected to be within the scope of the invitation. The question of what is reason-

able under these circumstances is a question more properly left to the trier of fact.

The Shopping Center also argues that *Silvestro* limits the types of activities which may be considered as incidental to the main purpose of the invitation. However, a careful reading of *Silvestro* reveals that the case limited activities which could be considered "incidental" to those activities which are "usually and customarily" carried on by visitors to a particular location. This would necessarily depend on the particular location. The activities which could be considered incidental to a visit to a car repair shop would necessarily vary greatly from those activities which could be considered incidental to a visit to a shopping center. One might expect any number of social or business activities to be conducted between patrons of a shopping center—planned and unplanned. For example, a patron, who has gone to the center to shop, may meet a business associate by chance and discuss a business matter. On the other hand, two business associates may plan to meet at the restaurant to have a business dinner, and one of them steps into the same chuckhole into which Markle fell. Or, two patrons may meet by chance and discuss a purely social matter. While this may be a common occurrence at shopping centers, the same activity might not commonly occur at another location. What is "usual" and "customary", therefore, would be a question of fact to be determined from all of the surrounding circumstances.

In conclusion, we find that although the material facts are not in dispute, we find that a trier of fact could reach the conclusion opposite that reached by the trial court and could infer Markle's actions were incidental to his reason for going to the Shopping Center.[2]

---

**2.** We would reach this same result if, for instance, Markle was discussing business with an associate while eating dinner at the restaurant and injured himself in the same parking lot by stepping into the same chuckhole when going out to his car for some papers to use in the discussion. One could say that Markle stepped out of his role as an invitee—although briefly— by leaving the restaurant to get the papers.

However, it is also reasonable that the owners could anticipate patrons would meet to discuss business over dinner. Thus, the question of whether the patron who has left the restaurant to get some papers from his car has stepped out of his role as invitee is one properly left to the trier of fact. Likewise, the question of whether the Shopping Center could have anticipated that Markle—or any other customer—would transact

Markle also argues that this court should abandon the distinction between invitees, licensees and trespassers. Our supreme court has recently declined the invitation to abandon these distinctions. *See Burrell, supra.* We likewise decline the invitation.

Reversed and remanded.

CHEZEM and CONOVER, JJ., concur.

business in the parking lot is one properly left to the trier of fact.