Judy JUMP, Appellant–Plaintiff,

v.

**BANK OF VERSAILLES and its Successor, Peoples Trust Company, and Mabel F. Hunter, Appellees–Defendants.**

No. 40A01–9101–CV–7.

Court of Appeals of Indiana,
First District.

Feb. 11, 1992.

Merritt K. Alcorn, Eckert, Alcorn & Goering, Madison, for appellant-plaintiff.

Ernest W. Smith, Smith, Bartlett, Heeke & Carpenter, Jeffersonville, for Bank of Versailles and its Successor, Peoples Trust Co.

Peter G. Tamulonis, John B. Drummy, Kightlinger & Gray, Indianapolis, for Mabel F. Hunter.

## STATEMENT OF THE CASE

RATLIFF, Chief Judge.

Judy Jump ("Jump") appeals from a summary judgment entered in favor of the Bank of Versailles and its Successor, Peoples Trust Company ("Bank"), and Mabel F. Hunter ("Hunter"), in an action for personal injury damages resulting from Jump's fall on ice. We affirm in part, reverse in part, and remand.

## ISSUES

We restate the issues on appeal as:

1. Is Jump's status on the property in dispute an issue properly disposed of by summary judgment?

2. Did the trial court correctly characterize Jump's status upon entering the Bank's property in terms of premises liability?

3. Did the trial court correctly determine that Hunter owed Jump no duty since the accident occurred off of Hunter's "premises"?

## FACTS [1]

The defendants' properties are located in the middle of a block on the west side of the courthouse square in Versailles. Bank's building is used as its main office, while Hunter's building is commercial in nature, housing several businesses which lease space in the building. The rear of both defendants' properties adjoins a public cross-alley. This cross-alley has existed for at least ten years. The extreme rear of both properties serves as a gravelled parking area, adjoining the cross-alley. Two sets of concrete steps lead from the parking area to the concrete pedestrian sidewalks below, which then funnel into the alleyway between the two buildings owned by Bank and Hunter. The alleyway extends from the parking area, traversing the distance of the defendants' properties, to the street on the courthouse square. Both sets of steps were constructed at the same time. The accident at issue in this dispute occurred on the northern set of steps.

The general public has used the alleyway extending from the cross-alley to the street running between the defendants' buildings for some time, although it is not a publicly dedicated alleyway. Historically, citizens have always passed across the property, using it as a passageway to the street. The alleyway, sidewalk, and northern set of steps have been maintained continuously throughout the relevant time period by Bank. This maintenance includes ice and snow removal. The Bank's policy includes having the first employee who arrives at the office shovel any accumulated snow and scatter "ice melt" on any icy portions of the sidewalk. Bank has not overtly discouraged anyone from using this walkway. Bank's main entrance is from the street

1. Attached to this opinion is Exhibit A, a diagram showing the defendants' premises where the fall at issue occurred. *See* Record at 242.

abutting the courthouse square at the end of the walkway in question, and customers usually only enter the Bank through this front entrance.

Jump worked in the basement of Hunter's building for Telemon Resources, Inc. ("Telemon"), a tenant in Hunter's building. Jump routinely parked in the rear parking area and used either set of steps to enter the Hunter building.[2] For several months, beginning in September of 1987, while construction was occurring on the rear of the Hunter building, Jump entered by the side door located on the north side of the Hunter building, directly abutting the alleyway separating the defendants' buildings. During this period, Jump regularly used the northern set of steps to reach the Hunter building. Jump had keys to both the Hunter building's back entrance, and the side entrance located between the Hunter building and Bank.

On March 4, 1988, an ice storm occurred in the area sometime before 6:00 a.m. and driving conditions were hazardous. Jump arrived for work at approximately 8:15 a.m. None of the Bank's employees had arrived yet. When Jump arrived for work that morning, she parked her vehicle close to the northern set of steps. Jump noticed that the parking lot was icy, and also that the railing by the steps was icy. However, she had observed a co-worker safely traverse the southern steps. Jump attempted to descend the northern steps, but slipped on the ice and fell down the steps. Jump was severely and permanently injured as a result of this fall.

Up to and including the time of Jump's fall, the property line between the Hunter and Bank buildings was not precisely known by the defendants. Both defendants treated the walkway between the buildings as common property between them. James Mitchell ("Mitchell"), the manager of Hunter's property, admitted

that the precise line of demarcation between the Hunter and Bank properties was basically unknown at the time of Jump's accident. Following Jump's accident, however, a survey was conducted and it was discovered that Bank owned not only the steps where the accident occurred, but also the entire width of alleyway separating defendants' buildings.[3]

## DISCUSSION AND DECISION

### Issue One

■ On appeal, we use the same standard as the trial court in evaluating the propriety of summary judgment. *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1210. Summary judgment is appropriate only if no material issue of fact exists and the movant is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Jackson,* 535 N.E.2d at 1210. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the record. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 54.

■ Summary judgment should not be used as an abbreviated trial and is rarely appropriate in negligence actions; issues of negligence, contributory negligence, causation, and reasonable care are most appropriately left for a determination by the trier of fact. *Jackson,* 535 N.E.2d at 1210–1211. However, the question of whether one is an invitee or a licensee is a matter of law. *Wingett,* 479 N.E.2d at 54. Like issues of duty, such an issue is a question of law for the court; thus, the question of Jump's status may have been proper for summary judgment proceedings. *See Robinson v. Kinnick* (1989), Ind.App., 548

2. It appears that practically speaking, where one parks determines which set of steps one uses in entering Hunter's building through the side door. However, as discussed in *Issue Three,* from a legal standpoint it is Hunter's encouragement to use Bank's set of steps that forms a vital issue in this case.

3. Hunter makes much of its lack of ownership in the alleyway; as discussed in *Issue Three,* however, such a finding does not necessarily preclude Hunter's liability for Jump's injuries.

N.E.2d 1167, 1168, *trans. denied.* The record shows that the facts of the incident are not in dispute; rather, the parties disagree regarding the application of the law to the facts. The core issue is whether, as a matter of law, the defendants owed Jump a duty when she fell.

We therefore initially dispose of Jump's contention that the issue of her status on the defendants' land was improperly resolved by summary judgment. However, because no factual dispute exists, the only issue properly disposed of by summary judgment in the case at bar is the duty owed to Jump involving her status on the defendants' land. The remaining issues to be resolved to warrant a finding of negligence, that is, the extent of duty owed, and whether a breach of such duty occurred, proximately causing Jump's injuries, are for the jury. *See Issues Two* and *Three; Markle v. Hacienda Mexican Restaurant* (1991), Ind.App., 570 N.E.2d 969, 975, n. 2. We therefore limit our holding to the determination that there was or was not a duty owed to Jump by the defendants under the undisputed facts of this case.

*Issue Two*

■ The crux of this dispute involves Jump's status on the concrete steps on which her accident occurred, and the resulting standard of care imposed on the defendants. Jump argues that the trial court improperly characterized her as a "licensee" at the time of her fall. Bank asserts that the trial court's ruling on Jump's status on its property was correct. We find that Jump was an "invitee" in relation to Bank when her accident occurred, and thus reverse summary judgment for Bank, and remand to the trial court for entry of summary judgment in Jump's favor on this issue.[4]

■ Indiana case law outlines the duties landowners owe to each of three status groups. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 639. First, a landowner owes a trespasser the duty to refrain from willfully, wantonly, or intentionally injuring him after discovering his presence. *Id.* Second, a landowner owes a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. *Id.* The landowner also has a duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge. *Id.* Finally, a landowner owes the highest duty to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises. *Id.* This duty is defined in the Restatement (Second) of Torts § 343 (1965):

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

Our supreme court resolved much confusion in the area of premises liability in the recent case of *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637. *Burrell* involved a social host's liability. The court held that social guests are invitees, and thus are entitled to a duty of reasonable care from landowners, as defined above in Restatement (Second) of Torts, § 343. *Id.* at 643. *Burrell*, in addition to determining a social guest's status in terms of premises liability, synthesized precursor case law on this issue, and its reasoning guides our decision.

In *Burrell*, the court discarded the "economic benefit test," and instead adopted a pure form of the invitation test to decide who qualifies as an invitee. *Id.* at 642. It is this test that we now apply to the facts

---

4. As discussed below, however, we determine only that Jump's status on Bank's property was that of an invitee, not that Bank breached any attendant duty to Jump, proximately causing Jump's injuries. The resolution of this ultimate issue of liability is for the jury. *See Markle,* 570 N.E.2d at 975, n. 2.

in Jump's case. The court in *Burrell* reasoned that the adoption of this test carried with it the incorporation of Restatement (Second) of Torts § 332 (1965), for use in determining who qualifies as an invitee in premises liability actions. *Id.* This section provides that the following persons qualify as invitees:

"(1) An invitee is either a public invitee or a business visitor;

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

Restatement (Second) of Torts § 332 (1965). It is under the auspices of this section that we evaluate Jump's status.

The first subsection states that an invitee is "either a public invitee or a business visitor." Restatement (Second) of Torts § 332(1). Therefore, we address whether Jump qualified as a public invitee or a business visitor when she fell on Bank's steps in conjunction with the definitions of these terms as provided in § 332(2) and (3). Jump does not qualify as a business visitor. Although she was a customer of Bank, her admitted purpose in traversing the northern set of steps that icy morning was to enter her place of business in Hunter's building. This purpose is not a purpose "directly or indirectly connected with business dealings with the possessor of land" as required by § 332(3). *See Burrell*, 569 N.E.2d at 642. Had she intended to first go to the front of Bank's building through the alleyway to use an automatic teller machine or make a deposit in the night depository box, for example, a different case might be presented.[5] However, since instead she was using the steps only out of convenience to enter Hunter's building, we cannot say that her status became that of a business visitor when she attempted to tra-

verse Bank's steps. *See Get–N–Go, Inc. v. Markins* (1989), Ind., 544 N.E.2d 484, 487 (commercial business open to public has continuing duty to deal with weather conditions which may create danger for customers on its premises); *Fleischer v. Hebrew Orthodox Congregation* (1987), Ind.App., 504 N.E.2d 320, 322, *trans. denied* (one who enters the premises for his own convenience, curiosity, or entertainment is a licensee, and cannot recover for injuries caused by the negligent maintenance of the premises).

Our decision that Jump was not a business visitor at the time of the accident, however, does not resolve Jump's characterization under § 332(1). We must also determine whether Jump was a public invitee on Bank's property according to § 332(2). This subsection states that Jump may qualify as a public invitee if she is "invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." Restatement (Second) of Torts § 332(2). Under the invitation test mandated by *Burrell*, 569 N.E.2d at 642, we find that Jump was a public invitee when she fell. The *Burrell* court stressed that an examination of the invitation itself is a necessary first step in determining a plaintiff's invitee status. *Id.* Thus, we scrutinize the Bank's explicit and implicit invitation to the public to use the steps at issue.

It is undisputed that the general public used the alleyway between Bank's and Hunter's buildings for many years as a public walkway, although the passageway was never officially dedicated as such. Record at 338–339. Additionally, Bank never posted signs restricting access to the passageway or forbidding trespassers, or those who were not using the passageway to conduct business with Bank, from traversing its steps and alleyway. Record at 324–325, 338–339, 345. Moreover, Bank's president testified that Bank maintained the steps and passageway "to prevent anyone from falling" and "to make sure every-

---

**5.** Such facts may create a duty by the landowner under Restatement (Second) of Torts § 332(3). However, since Jump presents no such facts in the case at bar, we leave the resolution of such issues to another day.

one had a safe way to get through." [6] Record at 345.

In sum, we find that Bank's invitation was sufficiently general and broad enough to encompass all pedestrians using the northern steps and the passageway, whether intending to transact business with Bank, to enter other businesses on the courthouse square, or indeed, for any other purpose, such as Jump's in going to work on the day she fell. *See Markle,* 570 N.E.2d at 975 (invitor under duty to keep premises which are within scope of invitation safe for all uses by invitees). Because we find that the broad scope of Bank's invitation to the public entitles Jump to invitee status as a public invitee on Bank's premises when the accident occurred, we find that summary judgment was improperly entered in Bank's behalf on this issue. *See Hutchins v. Norfolk & Western Railway Company* (7th Cir.1989), 890 F.2d 978, 980–981 (person injured when she fell while descending ladder from train was public invitee, not licensee, since railway routinely permitted members of public to board train in such circumstances; thus, plaintiff presented enough evidence to prevent summary judgment against her); *Lewis v. United States* (E.D.Mo.1988), 702 F.Supp. 231, 234 (person injured when she fell on ice on penitentiary grounds could recover as implied invitee); *Mead v. Salter* (1991), Ind.App., 566 N.E.2d 577, 580–581 (man who entered building to scan office directory to see if office for which he searched was within building was invitee); *City of Bloomington v. Kuruzovich* (1987), Ind. App., 517 N.E.2d 408, 413, *trans. denied* (city liable for injury which occurred in park where city maintained park as open to the public, thereby incurring duty to design park safely and keep safe from hazards); *Fleischer,* 504 N.E.2d at 320, 324 (applying public invitee test, woman injured at synagogue was an invitee and congregation owed her duty of reasonable care; however, genuine issue of material fact existed concerning whether congregation was negligent in maintaining premises); *cf. French v. Sunburst Properties, Inc.* (1988), Ind. App., 521 N.E.2d 1355, 1356 (man who entered apartment grounds chasing runaway dog was licensee because no implied invitation to enter existed).[7]

Therefore, we reverse, finding that Jump was a public invitee on Bank's property, and remand for a trial on the issue of whether Bank breached its duty of reasonable care in failing to make the steps, on which Jump fell, safe. *See Markle,* 570 N.E.2d at 975, n. 2. Our holding is restricted to only the determination that Jump was an invitee while on Bank's premises and that Bank's duty was one of reasonable care; the other findings necessary for Jump to recover in a negligence suit, namely, that Bank breached its attendant duty, proximately causing Jump's injuries, remain for the jury.[8,9]

*Issue Three*

■■■■ Jump claims that she was a business invitee of Hunter, even though her accident occurred technically off of Hunter's premises, placing a duty on Hunter to make the northern steps reasonably safe for Jump's use. Hunter counters that she owed Jump no duty since the accident did not occur on Hunter's property, and that even if a duty was owed to Jump as an

6. Bank's president also implied that installing and maintaining the steps and passageway fostered good public relations with the citizenry and Bank's customers. Record at 339.

7. We agree with Jump that Bank's reliance on *Snyder Elevators, Inc. v. Baker* (1988), Ind.App., 529 N.E.2d 855, *trans. denied,* is misplaced. This case, dealing with liability for off-premises activity resulting in injury, is more appropriately applied to our analysis of Hunter's liability to Jump. *See Issue Three.*

8. On remand, the jury may also address the issue of Jump's fault, if any, under Indiana's Comparative Fault Act, IND.CODE § 34–4–33–1, *et seq.* Although we decipher Bank's appellee's brief to suggest such an argument, such a determination is not our function on appeal.

9. In its twelve points at the outset of its argument, Bank makes a disingenuous argument that its standard of care somehow varies with weather conditions. We note that this contention is far removed from the cogent argument required by Ind.Appellate Rule 8.3(A)(7).

invitee, Hunter did not breach that duty.[10] We find that Hunter owed Jump no duty, and that even if she did owe Jump a duty while on Bank's land, she fulfilled any duty by providing an access to her building via the southern steps. We thus affirm summary judgment in Hunter's favor.

First, we examine Indiana case law applicable to Jump's claim against Hunter. Our supreme court's most recent case discussing premises liability, *Burrell*, 569 N.E.2d at 637, held that social guests are invitees. *Id.* at 643. That case, however, did not address the issue of an employee of a lessee, such as Jump, injured on steps on adjoining property. In a case decided subsequent to *Burrell*, *Smith v. Syd's, Inc.* (1991), Ind.App., 570 N.E.2d 126, *trans. pending*, persons injured while using a staircase jointly owned were held to be invitees in relation to both owners, since both shared ownership of and maintenance expenses for the staircase. *Id.* at 132–133. *Smith* is clearly distinguishable from Jump's case, since Bank and Hunter did not jointly own the northern set of steps on which Jump fell,[11] and did not share maintenance expenses. Contrary to Jump's reading of *Smith*, we find that although common usage was one factor the *Smith* court considered, the actual ownership and maintenance responsibilities were also important determinants in the court's decision.

Likewise, *Snyder Elevators, Inc. v. Baker* (1988), Ind.App., 529 N.E.2d at 855, *trans. denied*, is also factually inapposite to Jump's situation. In *Snyder*, the court reasoned that although sometimes a business owner may owe a duty to a member of the general public injured off of its business premises when the owner has maintained a hazardous condition or conducted some activity on the premises beyond the mere fact of operating the business, which causes an off-premises injury, facts warranting the imposition of such a duty did not exist in that case. *Id.* at 858–859. Similarly, Hunter did not maintain a hazardous condition or conduct some activity on its business premises which caused Jump's injury on Bank's property. Thus, *Snyder* does not aid our resolution of this issue.

*Ember v. B.F.D., Inc.* (1986), Ind.App., 490 N.E.2d 764, generally reasoned that a business owner's duty of reasonable care may extend beyond the business premises. *Id.* at 772. Such duty will be extended, however, only when it is reasonable for the invitees to believe that the invitor controls the premises adjacent to his own or where the invitor knows that his invitees customarily use such adjacent premises in connection with the invitation. *Id.* Although this case appears to have some bearing on Jump's claim in view of Hunter's encouragement to Jump to use the northern steps by providing Jump with a key to the Hunter building's side door, *Ember* involved a criminal assault by a third person in a parking lot adjacent to a tavern, not a fall on steps adjoining the business premises. Thus, we find *Ember* distinguishable from the case at bar both factually and on a public policy basis; it is thus of little value in our consideration of Jump's case.

Finally, the Seventh Circuit, construing Indiana law in *Justice v. CSX Transportation Inc.* (7th Cir.1990), 908 F.2d 119, reasoned that courts traditionally deny liability for physical harm caused by natural conditions on land. *Id.* at 123. The court ultimately held, however, that adjoining landowners may not use their land in such an unreasonable way as to injure the interests of persons not on their land, and reversed summary judgment in favor of the adjoining landowner. *Id.* This case is also factually distinguishable from Jump's case. *Justice* involved a man-made condition obstructing the view of a plaintiff whose vehicle collided with an oncoming train, while

---

**10.** It is not disputed that Jump's status while on Hunter's property or within Hunter's building would be that of an invitee; the pivotal issue is her characterization when on the adjoining land belonging to Bank.

**11.** At the time of Jump's fall, the exact property line dividing the defendants' properties was unknown. Subsequent to the filing of Jump's complaint, however, a survey revealed that Bank owned the entire sidewalk separating the two properties. *See* Supplemental Record at 1.

Jump simply slipped and fell on land adjoining Hunter's, without Hunter creating a dangerous condition on her land causing Jump's injury.

Because Indiana's precedents provide little guidance in the resolution of this issue,[12] we now turn to persuasive authority from other states facing similar issues. Each party cites cases from other jurisdictions which it contends support its position. After our study of the relevant cases, we conclude that Hunter owed Jump no duty and that even if we were to find that a duty was owed, Hunter fulfilled her duty in providing a means of ingress and egress via her southern steps.

In *Chimente v. Adam Corp.* (1987), 221 N.J.Super. 580, 535 A.2d 528, a pedestrian slipped and fell while walking along a dirt path leading to a shopping center parking lot. The court reasoned that commercial landowners have no duty to maintain the contiguous lands owned by others, simply because the public chooses to use such lands as a means of access to a landowner's commercial property, where the landowner provides a safe passage to his property through other existing entrances. *Id.* at 583–584, 535 A.2d at 530. The court held that the owner of the shopping center parking lot had no duty to maintain the dirt pathway across the adjoining owner's land because he had provided a safe passage to the lot through other existing entrances. *Id.*

Similarly, Hunter had provided an entrance for Jump to reach her place of employment in Hunter's building through the southern set of steps on Hunter's property.[13] Moreover, we also agree with the *Chimente* court that extending Hunter's duty to persons such as Jump would expand premises liability beyond its policy underpinnings. *See id.* The concern that innocent plaintiffs may be left with no defendants from whom to recover is not relevant when injured parties may seek recovery from the owner of the land on which they fell. Thus, we find that *Chimente* supports Hunter's claim that she owed Jump no duty.

The duty of a business owner to provide a safe means of ingress and egress for invitees coming onto its property was also addressed in *Rockefeller v. Standard Oil Company* (1974), 11 Wash.App. 520, 523 P.2d 1207. In *Rockefeller*, the plaintiff was injured when his truck ran into a ditch near the boundary of the defendant adjoining landowner's property while attempting to enter that defendant's service station. *Id.* at 520–521, 523 P.2d at 1208. The court held that the failure to warn of a hazard located near a property boundary may result in a breach of duty, even if the injury occurs entirely off of the landowner's property, and that a business owner owes a duty to provide safe ingress and egress for invitees coming onto his property. *Id.* at 522, 523 P.2d at 1208. Although Jump was injured while trying to enter Hunter's property as an invitee,[14] Hunter had provided another way of ingress and egress through the southern set of steps and back door of Hunter's building. Because Hunter provided the required entrance, we find that she fulfilled any duty she may have owed Jump, as such duty was defined in *Rockefeller*. Thus, even if we were to hold that Hunter owed Jump a duty, she did not breach such duty.

*Rockefeller* was followed by the Montana Supreme Court in *Piedalue v. Clinton*

---

**12.** Jump cites *Get–N–Go, Inc. v. Markins* (1989), Ind., 544 N.E.2d 484, as dispositive on the issue of Hunter's duty to remedy icy conditions on Bank's steps. However, this case is not applicable, since it concerned a duty by a landowner to keep *its* premises safe, not an attendant duty to keep adjacent premises owned by someone else safe.

**13.** Had Jump fallen while the southern set of steps was closed because of construction in the fall of 1987, a different case would be presented, since during that period, the only way to access Hunter's building from the rear parking lot was using Bank's steps. *See* Record at 167. We confine our holding to the facts presented by Jump.

**14.** For purposes of the argument that a duty did exist from Hunter to Jump while Jump was on Bank's property, we assume that Jump was an invitee of Hunter, since Jump's employer leased space in Hunter's building, qualifying Jump as an invitee within Hunter's premises. *See Burrell,* 569 N.E.2d at 642 (citing Restatement (Second) of Torts, § 332).

*Elementary School District* (1984), 214 Mont. 99, 692 P.2d 20. In *Piedalue*, an automobile driver was injured when she drove her vehicle into an irrigation ditch, and sued both the property owner, and the adjoining property owner. *Id.* at 101, 693 P.2d at 21. The court held that the duty of a property owner to maintain his premises in a reasonably safe condition or to warn of dangers includes the duty to warn of unsafe ways of ingress and egress to the owner's property, beyond the premises actually owned. *Id.* at 102, 692 P.2d at 22. Therefore, even if we were to expressly hold that Hunter owed Jump a duty while on Bank's property, which we do not, Hunter would have fulfilled this duty by providing access to her building through the southern steps and back door.[15]

This broad reading of *Rockefeller*, however, was limited in *Carter v. City of Houma* (La.App.1988), 536 So.2d 573. The *Carter* court found that the adjoining property owner owed even invitees no duty to warn of a danger on abutting property. *Id.* at 577. The court reasoned that a landowner is not liable for injuries caused by a defect in adjoining property unless he created or caused the defect *and* invited others to use the adjoining property. *Id* (emphasis added). Even if we were to say, as Jump asserts, that Hunter encouraged and invited Jump to use Bank's steps by providing Jump with a key to the Hunter building's side door, most easily accessible via the northern set of steps, thereby assuming a duty to Jump, we cannot say that Hunter created or caused a defect on Bank's property that caused Jump's injury.

Synthesizing *Rockefeller, Piedalue,* and *Carter,* we find that Hunter owed Jump no duty while on Bank's property, but that even if Hunter had assumed a duty by furnishing Jump with a key to the side door, Hunter fulfilled this duty by providing a means of ingress and egress through the southern steps and further, Hunter did not create any hazardous condition on Bank's land which would warrant the imposition of an additional duty. *See also State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216, 1217–1218, *trans. denied,* (operators of flea market adjacent to highway owed no duty to customers injured on highway while walking to flea market after parking alongside highway); *Cantrell v. Dendahl* (1972), 83 N.M. 583, 587–588, 494 P.2d 1400, 1404–1405 (where no evidence exists to show that adjoining landowner worked in concert with landowner to create condition that caused injury, required nexus to show joint tort-feasors is absent, and adjoining landowner cannot be held liable for injury off of his premises); *cf. Dumas v. Pike County* (S.D.Miss.1986), 642 F.Supp. 131, 136 (duty of landowner to invitees may extend to property's entrances, and if owner treats neighbor's property as his own, lack of formal title immaterial to owner's liability to invitees); *Wilson v. Goodland State Bank* (1980), 5 Kan.App.2d 36, 37, 611 P.2d 171, 172 (generally, abutting property owner has no duty to keep *public* sidewalks free from ice and snow) (emphasis added); *Lowe v. Thermal Supply* (La. App.1970), 242 So.2d 351, 352 (duty of business to customer as invitee exists where invitee required to cross adjoining property not owned by business to conduct business, especially if practice regularly followed).

Additionally, we find that many of the cases which Jump cites in her claim against Hunter are inapplicable to the facts of her situation. *See Food Giant, Inc. v. Witherspoon* (1987), 183 Ga.App. 465, 467–468, 359 S.E.2d 223, 226 (accident in shopping center not involving adjoining property owners, but leasing arrangement and former owner of property on which accident occurred); *Wilson v. Allday* (Miss.1986), 487 So.2d 793, 795 (involved lease agreement and accident in shopping center parking lot); *Horner v. Penn Fruit Co.* (1951), 169 Pa.Super. 473, 475, 82 A.2d 313, 314 (involved injury on public sidewalk, not private property); *King's Market, Inc. v. Yeatts* (1983), 226 Va. 174, 182–183, 307

---

**15.** Furthermore, we cannot say that the northern steps were a *per se* unsafe access to Hunter's property warranting a duty to warn or make safe. Were we to find that Hunter owed Jump a duty while traversing the steps on Bank's property, the extent of Hunter's duty would be a question for the jury. *See Markle,* 570 N.E.2d at 975, n. 2.

S.E.2d 249, 254–255 (involved lease and indemnity agreement).

While we agree that our supreme court in *Burrell* significantly expanded the concept of premises liability, we cannot extend this interpretation to include imposing a duty on landowners whose patrons, or in this case, lessees' employees, are injured on adjoining land. We agree that Hunter may have encouraged Jump to use Bank's steps by providing her with a key to the side door, but Hunter also provided another means to enter her building through the southern steps. We find that case law from other jurisdictions complements the few cases in Indiana construing similar circumstances, and thus adopt in relevant part these courts' reasoning. While we are sympathetic to Jump's plight, we will not aid even innocent plaintiffs by imposing a duty on adjacent landowners who have not created a dangerous condition affecting the adjoining property *and* invited their invitees to use such property. Summary judgment for Hunter is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Costs assessed fifty percent (50%) to Judy Jump and fifty percent (50%) to the Bank of Versailles and its Successor, Peoples Trust Company.

ROBERTSON and BAKER, JJ., concur.

## APPENDIX

Washington Street

N E W S

BANK OF VERSAILLES

MAbel Hunter-Blás.

PARKING

Alley

Exhibit "A"